# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STEVEN A.W. DE JARAY, PERIENNE DE JARAY,** and **DARREL R. OSWALD**, <br><br> Plaintiffs, <br><br> v. <br><br> **LATTICE SEMICONDUCTOR CORPORATION**, an Oregon-headquartered Delaware corporation, and **JOHN** and **JANE DOES 1-20**, <br><br> Defendants. | Case No. 3:19-cv-0086-SI <br><br> **OPINION AND ORDER** |

Douglas F. Stewart and Philip J. Benzanson Jr., Bracewell LLP, 701 Fifth Avenue, Suite 6200, Seattle, WA 98104; Phillip L. Sampson, Jr., Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, TX 77002; Nadia H. Dahab, Stoll Stoll Berne Lokting & Schlachter P.C., 209 SW Oak Street, Suite 500, Portland, OR 97204. Of Attorneys for Plaintiffs.

Derek F. Foran, James P. Bennett, George C. Harris, and Robert L. Cortez Webb, Morrison & Forrester LLP, 425 Market Street, San Francisco, CA 94105; Jack R. Scholz and Matthew J. Kalmanson, Hart Wagner, LLP, 1000 SW Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiffs Steven A.W. de Jaray, Perienne de Jaray, and Darrell R. Oswald (collectively, "Plaintiffs") bring this lawsuit against Lattice Semiconductor Corp. ("Lattice") and other unknown defendants seeking damages for False Advertising under the Lanham Act, Negligence, and Fraud, arising out of a transaction between Lattice and Apex-Micro Manufacturing

PAGE 1 – OPINION AND ORDER

Corporation ("Apex"). Plaintiffs were shareholders of Apex. Plaintiffs allege that Lattice failed properly to advertise the export-controlled status of two specific programmable logic devices (the "Seized Goods"). These devices were later seized by Canadian Border authorities who suspected the Seized Goods of being export controlled. Plaintiffs allege that the seizure and following civil and criminal investigations resulted from Lattice's material misrepresentations and omissions and caused reputational injury to Plaintiffs. Plaintiffs further allege that Lattice made public representations to them through Lattice's data sheets that the Seized Goods were not export controlled while privately, in communications with government investigators, representing the opposite—that the Seized Goods were export controlled.

Defendants filed a motion to dismiss, arguing that the relevant statute of limitations has expired, Plaintiffs fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiffs lack standing to recover damages under the Lanham Act. Plaintiffs then moved for leave to file a first amended complaint, which clarifies certain facts and adds claims for negligent misrepresentation and breach of the duty of good faith and fair dealing. For the reasons stated below, Plaintiffs' motion for leave to file a first amended complaint is granted and Defendants' motion to dismiss is denied, without prejudice to renew against Plaintiffs' first amended complaint.

## STANDARDS

**A. Motion to Dismiss**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**B. Motion to Amend**

Rule 15(a)(2) of the Federal Rule of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments . . . with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (quotation marks omitted). The purpose of the rule "is 'to

PAGE 3 – OPINION AND ORDER

facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a motion to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Generally, however, "[a]bsent prejudice, or a strong showing of any of the remaining [four] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (alterations added, emphasis in original). When weighing the factors, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

## DISCUSSION

### A. Motion to Amend

Defendant argues that Plaintiffs' proposed amended complaint is futile because its claims are time-barred, Plaintiffs fail to state a claim, and Plaintiffs do not have standing to bring claims. Each argument is addressed in turn.

1. **Futility Generally**

Leave to amend may be denied if the proposed amendment is futile or would be subject to immediate dismissal. *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada Cty*, 119 F.3d 1385, 1393 (9th Cir. 1997)); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988))). If the underlying facts or circumstances possibly could "be a proper subject of relief, [a plaintiff] ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The standard for assessing whether a proposed amendment is futile therefore is the same as the standard imposed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see Miller*, 845 F.2d at 214, although "viewed through the lens of the requirement that courts freely give leave to amend when justice so requires." *Barber v. Select Rehab., LLC*, 2019 WL 2028519, at *1 (D. Or. May 8, 2019) (quotation marks omitted).

2. **Statute of Limitations**

Defendant argues that Plaintiffs' proposed amended complaint is futile because the statute of limitations has expired for several claims. The parties do not dispute that those claims are subject to Oregon's discovery rule. The Oregon Supreme Court has held that

> the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists.

*Gaston v. Parsons*, 318 Or. 247, 256 (1994). For the statute of limitations to begin to run, "the plaintiff does not need to know to certainty that each particular element exists. . . . Actual knowledge . . . is not required. On the other hand, a mere suspicion is insufficient to begin the statute of limitations to run." *Id.* at 255-56. "For purposes of determining what facts a plaintiff knows or should have known, '[t]he discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation.'" *Padrick v. Lyons*, 277 Or. App. 455, 466 (2016) (alteration in original) (quoting *Kasberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011)). Plaintiffs must "act diligently to discover the relevant facts." *Id.*; *see also Gaston*, 318 Or. at 256 ("The discovery rule does not protect those who sleep on their rights, but only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered legally cognizable harm.").

"Precisely when a person reasonably should have known that the harm suffered was caused by another's negligence generally presents a question of fact. Still, in some cases, the facts may be such that no triable issue exists as to when a plaintiff knew or should have known that the defendant caused the harm suffered, and, in those cases, the matter may be resolved as a matter of law." *Hoeck v. Schwabe, Williamson & Wyatt*, 149 Or. App. 607, 612 (1997) (citation omitted). A court cannot decide the question as a matter of law "unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Kaseberg*, 351 Or. at 278. The parties debate the implications of certain documents in this case, or whether Plaintiffs should have suspected Defendant's role in the seizure sooner or filed a Freedom of Information Act ("FOIA") request sooner. These factual issues are not appropriate for resolution at this stage of litigation and thus do not support a finding of futility.

### 3. Failure to State a Claim

Defendant argues that the proposed amendment is futile because all the claims would be subject to immediate dismissal based on a Rule 12(b)(6) analysis that the facts as alleged do not state a claim.

#### a. Fraud

Defendant argues that documents show that it did not make any false statements or material omissions. The parties dispute what documents were sent to Plaintiffs and the implications of those documents. These types of fact disputes are not appropriately resolved on a Rule 12(b)(6) motion and thus do not support a finding of futility.

#### b. Economic Loss Doctrine

Defendant argues that Plaintiffs' negligence and negligent misrepresentation claims are barred by the economic loss doctrine. Defendant argues that because Plaintiffs did not plead any injury apart from pure economic injuries and failed to plead any special duty or relationship, Plaintiffs fail to state a claim.

The general rule for negligence under Oregon law is that a plaintiff must allege actual, physical harm, in order to be entitled to damages. *Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 545 (2006). "[O]ne ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property." *Hale v. Groce*, 304 Or. 281, 284 (1987). Under Oregon law, for a plaintiff to recover in circumstances where there is no physical harm, "the plaintiff would have to show some source of duty outside the common law of negligence, such as a special relationship or status that imposed a duty on the defendant beyond the common-law negligence standard." *Harris v. Suniga*, 344 Or. 301, 307 (2008) (quotation marks omitted).

Plaintiffs argue that the existence of a special relationship is factually intensive and that the facts alleged in the proposed amended complaint are sufficient under Oregon law to show a

PAGE 7 – OPINION AND ORDER

special relationship, or at least create a fact issue on the question that refutes futility at this stage.

Plaintiffs cite *Vigalante.com, Inc. v. Argus Test.com, Inc.*, in which the court found:

> while a mere distributorship relationship is insufficient, in and of itself, to create a special relationship, neither does this relationship preclude a finding that a special relationship exists. Vigilante has pled sufficient facts to put Nexantis on notice of the alleged basis of a special relationship—namely, that in its role as a longstanding "business partner" and/or "distributor" of Vigilante, Nexant is purported to act to further Vigilante's economic interests, thus imposing a burden upon Nexantis to exercise due care in its representations to Vigilante.

2005 WL 2218405, at *16 (D. Or. Sept. 6, 2005). Plaintiffs, however, do not allege a longstanding relationship with Defendant that is the equivalent of a business partnership or under which Defendant was obligated to act to further Plaintiffs' economic interests, as opposed to Defendant's economic interests.

The Court shares Defendant's skepticism about the alleged special relationship and whether the additional facts alleged by Plaintiffs are sufficient. The Court does not find, however, that no set of facts could be alleged by Plaintiffs showing a special relationship between the parties. There may be "additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint" that would support Plaintiffs' claimed special relationship. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)). Thus, Plaintiffs' allegations supporting a special relationship do not support a finding of futility.

### c. Federal Regulations

Plaintiffs allege that Lattice's data sheets did not indicate the Seized Goods export-controlled status because the data sheets listed a "case" temperature range of 218K ( -55° C) to 398K (+125°C), a range that were it for "ambient" temperature rating would indicate export control. All of Plaintiffs claims are premised on the allegation that they had no recourse to

PAGE 8 – OPINION AND ORDER

determine export-control status due to the data sheets mislabeling. Plaintiffs also allege that a measured case temperature, necessarily measured during operation, is always higher than associated ambient temperature. Plaintiffs summarize this allegation as: "In sum, a maximum case temperature (TC) *rating* for a device's operation is *necessarily* higher than the associated maximum ambient temperature (TA) *rating* for the same device."

Defendant argues that accepting these facts as true, the data sheets do indicate the Seized Goods were export-controlled because if the case temperature is necessarily higher than ambient temperature, and case temperature is rated 218K to 398K, then the ambient temperature rating necessarily must be lower than 218K. Integrated circuits are subject to export controls if they are "[r]ated for operation at an ambient temperature below 218K." 15 C.F.R. § 774, Supp. No. 1, Cat.3.

Defendant raised this argument challenging Plaintiffs' original complaint, which alleged that "the case temperature (TC) *rating* must *necessarily* be higher than the ambient temperature (TA) *rating*, without exception." (emphasis in original). The proposed amended complaint, however, changes this allegation to that the "maximum" case temperature rating during operation is necessarily higher than the "maximum" ambient temperature rating. Defendant argues that this change does not cure the defect that as alleged by Plaintiffs, the data sheet shows that the circuits were export controlled. The Court disagrees.

The original allegation was both broad and definitive. It alleged that case temperature ratings were always higher than ambient temperature ratings, without qualification. Plaintiffs argued in response to the motion to dismiss that when the circuit is not operating the differences between the case and ambient temperatures is negligible and the problematic differences are during operation, particularly maximum temperatures. The Court in analyzing a motion to

dismiss, however, must consider the allegation itself. The original allegation was such that it left little choice but to interpret that ambient temperature ratings were always lower than case temperature ratings and thus the products at issue had rated ambient temperatures of lower than 218K (because the products had case temperature ratings of a minimum of 218K).

The proposed amended complaint is substantively different. It alleges that during operation temperatures rise, the temperature of the case rises, and the case temperature is higher than the ambient temperature. That paragraph is focused on operating temperatures. The summary paragraph then solely focuses on the *maximum* case temperature rating and the *maximum* ambient temperature rating. It no longer alleges that all case temperature ratings are necessarily higher than ambient temperature ratings. For example, it does not address minimum case temperature rating and minimum ambient temperature ratings. Additionally, even if Plaintiffs' amended allegations could still be made more clear to align with the argument as articulated in Plaintiffs' brief, that indicates that there are some set of facts under which Plaintiffs could state a claim. Accordingly, these allegations do not show futility.

### d. Absolute Privilege

Defendant argues that its cooperation with the government during a government investigation is subject to absolute privilege and cannot form the basis of liability. Plaintiffs respond that Defendant misconstrues the allegations in the proposed amended complaint. Plaintiffs argue that their allegations are not that Defendant did anything wrong with respect to its communications or cooperation with the government. Plaintiffs note that their allegations are that the FOIA request revealed for the first time what Defendant's true understanding and belief was with respect to the export-controlled status of the products it manufactured, which was different than the status Defendant had represented to Plaintiff in verbal and written statements. The relevance of Defendant's communications with the government is to show what Defendant's

PAGE 10 – OPINION AND ORDER

truly believed when it made other, different representations to Plaintiffs. The communications are not being used to subject Defendant to liability for cooperating with the government. Defendant's argument regarding absolute privilege does not show futility.

**4. Standing**

Defendant argues that the proposed complaint conflates injury to Plaintiffs and injury to Apex, and Plaintiffs are not able to allege injury to Apex. Defendant also alleges that Plaintiffs do not have statutory standing to bring claims under the Lanham Act.

Plaintiffs are limited to injuries personally suffered and may not recover for injuries to Apex, a corporation. *Johnson v. Con-Vey/Keystone, Inc.*, 814 F. Supp. 931, 934 (D. Or. 1993) ("The law is clear that a shareholder does not have standing to seek compensation for an injury to a corporation."). "[T]he corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson,* 538 U.S. 468, 474 (2003). Plaintiffs' proposed amended complaint does not add Apex as a separate Plaintiff. Plaintiffs, however, allege their own personal injuries. The fact that they personally were injured as a result of conduct involving their corporation and a business relationship between Defendant and Apex does not mean they do not have standing to assert their claims for their own injuries.

The next question is whether Plaintiffs have standing to recover relief under the Lanham Act. The Supreme Court has held "that a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). Although Plaintiffs' injuries may not be the "paradigmatic direct injury from false advertising," as occurs in the diversion of direct sales context, this does not necessarily preclude Plaintiffs from having cognizable injury under § 1125(a). *See id.* at 138 (noting that the "paradigmatic"

PAGE 11 – OPINION AND ORDER

case "is not the only type of injury cognizable under § 1125(a)"). To have standing to bring a Latham Act false advertising claim, a plaintiff's interest must "fall within the zone of interests protected by the law invoked." *Id.* at 130. "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales . . . a business misled by a supplier into purchasing an inferior product is . . . not under the Act's aegis." *Id.* at 132.

Plaintiffs' proposed first amended complaint establishes standing under the Lanham Act sufficient to survive a motion to dismiss. Plaintiffs allege that as a result of false advertising contained in Defendant's data sheets, Plaintiffs suffered injury to their commercial, as opposed to personal, interests. Specifically, Plaintiffs allege that as a result of Defendant's false advertising, Plaintiffs suffered a loss of goodwill in the products with which they are professionally associated and in their professional reputations. Plaintiffs allege that Steven and Perienne de Jaray suffered reputational harm that affected their prospects at founding and operating other businesses, *see* ECF 47-1 at 17 (¶ 72), and that Mr. Oswald suffered harm to his professional reputation. *Id.* at 18-19 (¶¶ 80-82). Accordingly, the allegations are sufficient to show statutory standing, at least at this stage of the litigation.

5. **Conclusion**

The Court does not find that Plaintiffs' proposed amended complaint is subject to immediate dismissal, viewing the allegations through the lens of the requirement that courts freely give leave to amend when justice so requires and considering whether "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Harris*, 847 F.3d at 656. The underlying facts and circumstances possibly could state a claim. Accordingly, the proposed amended complaint is not futile.

## CONCLUSION

For the reasons stated above the Court GRANTS Plaintiffs' Motion for Leave to File First Amended Complaint (ECF 47). Defendant's motion to dismiss (ECF 7) Plaintiff's original complaint is DENIED without prejudice to file a motion to dismiss against Plaintiff's First Amended Complaint.

**IT IS SO ORDERED**.

DATED this 20th day of September, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge