IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**STEVEN A.W. DE JARAY, PERIENNE DE JARAY,** and **DARREL R. OSWALD**,

    Plaintiffs,

v.

**LATTICE SEMICONDUCTOR CORPORATION**,

    Defendant.

Case No. 3:19-cv-86-SI

**OPINION AND ORDER**

Joshua Berman, Isaac Glassman, Colin McCann Ceriello, and Scott T. Weingaertner, WHITE & CASE LLP, 1221 Avenue of the Americas, New York, NY 10020; Keil M. Mueller and Lydia Anderson-Dana, STOLL STOLL BERNE LOKTING & SCHLACHTER P.C., 209 SW Oak Street, Suite 500, Portland, OR 97204. Of Attorneys for Plaintiffs.

Derek F. Foran, Robin Brewer, Wendy J. Ray, and Michael Komorowski, MORRISON & FORRESTER LLP, 425 Market Street, 32nd Floor, San Francisco, CA 94105; James P. Bennett, THE NORTON LAW FIRM PC, 299 Third Street, Suite 200, Oakland, CA 94607; Nika Aldrich and Jason A. Wrubleski, SCHWABE, WILLIAMSON & WYATT, P.C., 1211 SW 5th Avenue, Suite 1900, Portland, OR 97204. Of Attorneys for Defendant

**Michael H. Simon, District Judge.**

    Plaintiffs Steven A.W. de Jaray, Perienne de Jaray, and Darrell R. Oswald (collectively, "Plaintiffs") bring this lawsuit against Lattice Semiconductor Corp. ("Lattice"), asserting claims

arising out of sales transactions between Lattice and Apex-Micro Manufacturing Corporation ("Apex"). Plaintiffs seek damages for False Advertising under the Lanham Act, Negligence, Fraud, Breach of the Duty of Good Faith and Fair Dealing, and Negligent Misrepresentation. Plaintiffs were shareholders of Apex. Plaintiffs contend that Lattice failed properly to advertise or inform Plaintiffs of the export-controlled status of integrated circuits (also described as programmable logic devices) that Lattice sold to Plaintiffs, particularly two integrated circuits that were seized by Canadian border authorities in December 2008 (the "Seized Goods"). The Canadian authorities suspected the Seized Goods of being export controlled and requiring an export license (or permit) that Plaintiffs failed to obtain before exporting. Plaintiffs claim that the seizure and subsequent civil and criminal investigations resulted from Lattice's material misrepresentations and omissions to Plaintiffs and caused reputational injury to Plaintiffs. Plaintiffs further assert that Lattice made representations to them through Lattice's datasheets and other documentation that the Seized Goods were not export controlled after privately reclassifying them as export controlled items and while privately representing the opposite to government investigators—that the Seized Goods were export controlled.

Before the Court is Lattice's first motion for summary judgment. This motion requests summary judgment on Plaintiffs' claims based on Lattice's affirmative defenses asserting the statute of limitations, the doctrine of laches, the *Noerr-Pennington*[1] doctrine, and Oregon's litigation privilege. For the reasons discussed below, the Court denies Lattice's motion.

---

[1] The *Noerr-Pennington* doctrine derives its name from two cases, *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965). The Supreme Court expanded the doctrine in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).

**STANDARDS**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

**DISCUSSION**

**A. Statute of Limitations**

Oregon has a two-year statute of limitations for Plaintiffs' state claims.[2] Or. Rev. Stat. § 12.110(1). Plaintiffs filed this case on December 18, 2018, and thus conduct before

---

[2] In Lattice's motion, it argued that Plaintiffs' claim for breach of the implied duty of good faith and fair dealing likely was subject to Oregon's four-year limitations period for sales under Oregon's adoption of the Uniform Commercial Code, which is not subject to the discovery rule. After Plaintiffs disputed the application of this limitation period in their response, Lattice abandoned this argument on reply. Thus, the Court considers all Plaintiffs' state law claims as subject to Oregon's two-year statute of limitations and the discovery rule. The Court expresses no opinion on whether Plaintiffs have standing to bring a claim for breach of the implied covenant of good faith and fair dealing, whether arising in contract or tort, or whether Plaintiffs have demonstrated the requisite independent duty to allege a tort-based claim. *See Uptown*

PAGE 3 – OPINION AND ORDER

December 18, 2016 is outside the statute of limitations. Plaintiffs' state law claims, however, are subject to Oregon's discovery rule.

The Oregon Supreme Court has held:

> [T]he statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists.

*Gaston v. Parsons*, 318 Or. 247, 256 (1994). For a statute of limitations to begin to run, "the plaintiff does not need to know to certainty that each particular element exists. . . . Actual knowledge . . . is not required. On the other hand, a mere suspicion is insufficient to begin the statute of limitations to run." *Id.* at 255-56. "For purposes of determining what facts a plaintiff knows or should have known, the discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation.'" *Padrick v. Lyons*, 277 Or. App. 455, 466 (2016) (cleaned up). Plaintiffs must "act diligently to discover the relevant facts." *Id.*; *see also Gaston*, 318 Or. at 256 ("The discovery rule does not protect those who sleep on their rights, but only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered legally cognizable harm.").

"Precisely when a person reasonably should have known that the harm suffered was caused by another's negligence generally presents a question of fact. Still, in some cases, the facts may be such that no triable issue exists as to when a plaintiff knew or should have known that the defendant caused the harm suffered, and, in those cases, the matter may be resolved as a matter of law." *Hoeck v. Schwabe, Williamson & Wyatt*, 149 Or. App. 607, 612 (1997) (citation

---

*Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 648-49 (1995). Such arguments are not currently before the Court.

PAGE 4 – OPINION AND ORDER

omitted); *see also Johnson v. Multnomah Cnty. Dep't of Cmty. Just.*, 344 Or. 111, 118 (2008) ("The question whether and when a plaintiff knew or should have known that his or her injury was caused by a particular defendant's tortious conduct ordinarily is a question of fact for the jury; it may be decided on summary judgment as a matter of law only if the record on summary judgment presents no triable issue of fact."). A court, however, cannot decide the question as a matter of law "unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Kasberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011).

Plaintiffs claims involve conduct by Lattice from 2012 and earlier, and primarily conduct from 2009 and earlier. Plaintiffs assert, however, that they did not discover the actionable conduct until 2017. Plaintiffs claim that they discovered this conduct when Plaintiff Perienne de Jaray filed a civil lawsuit under the Alien Tort Claims Act. As part of that lawsuit, Ms. de Jaray filed a Freedom of Information Act request. In reviewing the information obtained, she discovered that Lattice had been representing that the Seized Goods were rated for operation at the *ambient* temperature range, despite the datasheets representing that the goods were rated for operation at the *case* temperature range. Programmable integrated circuits rated for operation at the ambient temperatures at issue here are export controlled.

Lattice argues that Plaintiffs should have made a reasonable inquiry[3] about the facts giving rise to their claims when the sales occurred, when the Canadian government seized the goods, and when Plaintiffs' received documents from the Canadian government during the

---

[3] Lattice contends that Plaintiffs were on "inquiry notice," but the Oregon Supreme Court has specifically rejected the use of that term. *See Johnson*, 344 Or. at 119 ("'Inquiry notice'" is a confusing and imprecise label. 'Notice' may cause an 'inquiry' based on it, but the inquiry is not one made on 'inquiry notice.' We specifically disapprove of the use of that term.").

PAGE 5 – OPINION AND ORDER

investigation. Thus, Lattice contends, Plaintiffs had multiple opportunities to discover their claims, all well before the statute of limitations period.

"[T]he discovery rule does not protect plaintiffs who fail to make a further inquiry when a reasonable person would do so." *Johnson*, 344 Or. at 119. The Oregon Supreme Court has cautioned, however, about "when, in these circumstances, can we say that a reasonable person would have made a further inquiry?" *Id.* The court continued, admonishing, "[a]nd—perhaps even more importantly—when can we say that a reasonable further inquiry would have led to the discovery of further evidence that would give plaintiff knowledge of her claim?" *Id.* at 119 n.4. Thus, generally, "[w]hether a plaintiff is subject to a duty to inquire about facts that might trigger a statute of limitations . . . is itself a question of fact." *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 521 (2007). If such a duty is triggered, "the period of limitations would commence at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury." *Greene v. Legacy Emanuel Hospital*, 335 Or. 115, 123 (2002).

### 1. Product Seizure, Investigations, and Datasheets

Lattice first contends that Plaintiffs should have made an inquiry into their claims based on Lattice's datasheets when the shipments were seized and Plaintiffs' were investigated and indicted. Lattice argues that Plaintiffs knew they had relied on Lattice's datasheets, knew the contents of Lattice's datasheets, and knew that Canadian officials were investigating Plaintiffs and then indicted them based on the lack of an export license. The Canadian authorities believed that the Seized Goods had an ambient temperature range that required an export license. Plaintiffs believed they did not. Lattice notes that Plaintiffs commissioned a report claiming that because Lattice's datasheets omitted any reference to ambient temperatures, the Seized Goods should not be subject to an expert license.

In response to Plaintiff's report, Lattice's Vice President of Corporate and Customer Quality, Michael Gariepy, issued a report on behalf of the Canadian government (Gariepy Report). This report explained that the devices purchased by Apex will *operate* at the ambient temperatures ranges required for an export permit, were *tested* at those ambient temperature ranges, but that the operating temperature range *designated* on the datasheets was the case temperature range because the relevant Department of Defense standard microcircuit drawings (SMD) only specified performance over a *case* temperature range. Lattice argues that given all of this information, no reasonable juror could conclude that during this time Plaintiffs were not on notice that there was a substantial possibility that there was a misrepresentation in Lattice's datasheets that caused the seizure and subsequent investigations.

Plaintiffs respond that semiconductor microcircuit producers include product ratings in their datasheets, and that is on what export requirements are based. Plaintiffs argue that their only reasonable response during the investigation was to review the datasheets and relevant SMDs to ensure they did not include ambient temperatures (which they did not), and then mount a defense based on that fact. Plaintiffs contend that the Gariepy Report only confirmed Plaintiffs' position that the relevant SMD did not require ambient temperatures and the datasheets did not include them.

The Canadian government suspended the prosecution of Plaintiffs less than one week after Lattice provided the Gariepy Report. Thus, argue Plaintiffs, it was reasonable for them to believe that the datasheets were correct and the Gariepy Report supported that belief. Plaintiffs believed Lattice and the Gariepy Report were Plaintiffs' "white knight" and argue the documents, investigation, and Gariepy Report did not alert them that they had any claim against Lattice. Plaintiffs argue that the fact that the Gariepy Report stated that the Seized Goods could

*operate* over the ambient temperatures or were *tested* over those temperatures says nothing about whether they were *rated for operation* at the requisite ambient temperatures.

Viewing the facts in the light most favorable to Plaintiffs, as the Court must do at this stage in the proceedings, Plaintiffs' knowledge of the datasheets, the seizure, the investigation, and the Gariepy Report did not, as a matter of law, put them on notice of their claim or even on notice to inquire further. The Canadian government dropped the prosecution after receiving the Gariepy Report, which a reasonable person could read as supporting Plaintiffs' view regarding the critical distinction between the products being *rated for operation* at case temperatures instead of ambient temperatures. The Canadian government even paid a settlement to Plaintiff Steven De Jaray for negligent prosecution. The U.S. government continued its investigation, but closed the investigation without bringing charges shortly after the U.S. Attorney heard a presentation from defense counsel describing the datasheets, the Gariepy Report, the abandoned Canadian prosecution, and the resolution of the Canadian civil suit. The datasheets, the product seizure, and the history of the investigations into Plaintiffs do not lead to only one reasonable conclusion for a jury to draw—that the datasheets misrepresented that the products were *rated* for operation at case temperatures instead of ambient temperatures. Thus, summary judgment is not appropriate.

### 2. Commercial Invoices

Lattice also asserts that its commercial invoices gave sufficient notice to Plaintiffs that the programmable logic devices were export controlled and thus Plaintiffs should have made a reasonable inquiry if they believed otherwise. Lattice cites the references on the "white" copies of its commercial invoices to "ECCN 3A001.a.2.c," a U.S. regulation, and an explicit "EXPORT REGULATION" warning that "These commodities, technology or software were exported from the United States in accordance with the export administration regulations. Diversion contrary to

PAGE 8 – OPINION AND ORDER

U.S. law prohibited." ECF 146-17 at 2. These references are redacted on the "green" copy of the invoices. Lattice asserts that even if Plaintiffs did not originally receive the commercial invoices, it received them no later than 2010 as part of Mr. de Jaray's criminal case.

Whether the invoices gave sufficient notice involves several disputed facts. Plaintiffs dispute that they ever received the white copies of the commercial invoices as part of the course of business. They contend that Lattice provided the white copies to the shipping entity receiving these invoices. Plaintiffs note that Lattice's witness Robert Henry testified at deposition, contrary to his declaration submitted at summary judgment, that all three of the white copies of the commercial invoice are given to the customs broker and shipping carrier because that invoice is used for customs purposes. Plaintiffs also dispute that a reasonable person would have focused on the commercial invoices as containing important information. Plaintiffs contend these invoices were not part of the sales transaction between Lattice and Apex (being shipping and customs-related) and were not the invoices by which Apex was billed.

Plaintiffs further contend that even if some commercial invoices may have been received by Apex, such as in a delivery pouch, it is disputed whether they would put Plaintiffs on notice, as a matter of law. Plaintiffs point out that of the 97 commercial invoices that Lattice argues were seized by the Canadian government in taking Apex's business records (none of which were for the Seized Goods), 74 were redacted versions that did not have the references Lattice relies on as creating notice. In addition, of the 23 that were not redacted, most of them involved different types of products and all of them included the acronym "NLR" for "no license required." Plaintiffs also assert that all the invoices contained a second page of terms that included a statement that the devices conformed to their published datasheets. Plaintiffs also argue that as Canadian citizens with Canadian attorneys, it is not reasonable to conclude that a

PAGE 9 – OPINION AND ORDER

reference to a United States regulation would have a specific meaning to them or that they should have understood what "ECCN 3A01.a.2.c" meant. Plaintiffs further argue that even if they did know what that regulation meant, it involves products regulated based on operating at ambient temperature and the datasheets for the products they were purchasing stated the products operated based on case temperature and so that notation would not have been meaningful to a reasonable person in their situation. Further, a generic warning not to break U.S. law did not put them on notice because they did not have any reason to believe they were breaking U.S. law.

Regarding the datasheets that were turned over during Mr. de Jaray's criminal case, Plaintiffs argue that these have the same deficiencies—redactions and statements that the products conform to the datasheets. Plaintiffs also argue they were negated by the fact that Lattice submitted the Gariepy Report and the authorities stayed and then dropped the prosecution. This reinforced Plaintiffs' belief that Lattice "saved the day," and Plaintiffs argue a reasonable person would not have been looking for evidence that Lattice had secretly reclassified the case-rated integrated circuits to ambient-rated and was secretly telling government authorities that the products were rated for ambient temperature operation and were thus export controlled.

Under the standards for summary judgment and Oregon's discovery rule, the commercial invoices are not a sufficient basis for the Court to grant summary judgment. The fact disputes alone preclude summary judgment. And even if the Court were to assume that Plaintiffs received the invoices, the Court does not find that every reasonable juror would necessarily conclude that the reference to "3A001.a.2.c" in the box "ECCN" on the commercial invoice plus the mandated export warning were enough to put a reasonable person on notice to make further inquiry, particularly in light of the other circumstances highlighted by Plaintiffs. This is the type of fact question best suited to decision by a jury.

PAGE 10 – OPINION AND ORDER

### B. Laches

Lattice argues that it is entitled to summary judgment on its Lanham Act claim based on laches. "Laches is an equitable defense to Lanham Act claims." *Internet Specialties W., Inc. v. Milon–Digiorgio Enters.*, 559 F.3d 985, 989 (9th Cir. 2009). The affirmative defense of laches is an equitable defense tried to the Court. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). The Court may, however, obtain an advisory opinion from the jury. *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1020 (9th Cir. 2018).

In considering the affirmative defense of laches, a court first "assess[es] the plaintiff's delay by looking to whether the most analogous state statute of limitations has expired," and if so, "there is a strong presumption in favor of laches." *Pinkette*, 894 F.3d at 1024. "If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." *Jarrow*, 304 F.3d at 835. "The limitations period for laches starts when the plaintiff knew or should have known about its potential cause of action." *Internet Specialties*, 559 F.3d at 990. As discussed above, whether Plaintiffs filed within the statute of limitations is an issue of fact. The Court finds that it is most efficient to have the jury provide an advisory opinion on this factual issue, or at least for the Court to postpone its decision until after the jury decides on the statute of limitations legal defense. Thus, summary judgment is denied.

### C. Lattice's Cooperation with Government Authorities

#### 1. Judicial Estoppel

Lattice argues that Plaintiffs disavowed that they were relying on Lattice's cooperation with governmental authorities in responding to Lattice's motion to dismiss and the Court relied on that disavowal in denying Lattice's. Lattice contends that Plaintiffs now assert differently, claiming that Lattice made false representations to the government that caused harm to Plaintiffs. Lattice argues these contentions should be barred by judicial estoppel.

A district court has discretion whether to impose judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). In considering whether to apply judicial estoppel, a district court may consider several questions, including whether "the party's later position [is] 'clearly inconsistent with its earlier position.'" *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire*, 532 U.S. at 750-51).

The Court declines to apply judicial estoppel here. As an initial matter, the Court did not resolve Lattice's motion to dismiss on the merits, but resolved Plaintiffs' motion to amend.[4] In so doing, the Court summarized Plaintiffs' short argument in its reply in support of its motion to amend that they were not basing liability on any asserted wrongdoing of Lattice in communicating with government officials, but that Plaintiffs' claims instead are based on Lattice's communications with Apex and Plaintiffs. Plaintiffs claims have not changed.

Additionally, in Plaintiffs' response to Lattice's motion to dismiss, Plaintiffs argued that Lattice made "misleading" statements to authorities and provided information that was "erroneous" and "scientifically irreconcilable." *See, e.g.*, ECF 26 at 15-16. Thus, the statements that Lattice contends Plaintiffs are now making are not clearly inconsistent with their earlier representations made in responding to Lattice's motion to dismiss.

### 2. *Noerr-Pennington*

Lattice argues that Plaintiffs' reliance on Lattice's purported misconduct in its cooperation with the government is barred by the *Noerr-Pennington* doctrine. The First Amendment to the U.S. Constitution guarantees the right "to petition the Government for a redress of grievances." U.S. Const. Amend. I, cl. 6. To make the Petition Clause meaningful, the

---

[4] After granting leave to amend, the Court denied Lattice's motion to dismiss without prejudice to file a motion against Plaintiffs' First Amended Complaint. ECF 50 at 13.

Supreme Court, through the *Noerr-Pennington* doctrine, ensures persons are immune from antitrust or other statutory or tort liability "for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (describing immunity from antitrust liability); *see also Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (applying doctrine to state law claims alleging tortious interference with prospective economic advantage).

This doctrine, however, does not apply here because Plaintiffs are not asserting liability for Lattice's conduct in communicating with the government. Lattice's communications with the government are relevant to Plaintiffs' claims only to the extent they show what Lattice knew, believed, or represented at the time it made the purportedly different representations to Plaintiffs.

### D. Litigation Privilege

In a footnote, Lattice asserts that Oregon's "litigation privilege" independently immunizes Lattice's conduct in cooperating with law enforcement personnel. This argument is rejected for the same reasons the Court declined to apply the *Noerr-Pennington* doctrine.

## CONCLUSION

The Court DENIES Lattice's First Motion for Summary Judgment, ECF 143.

**IT IS SO ORDERED**.

DATED this 6th day of September, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge