# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STEVEN A.W. DE JARAY, PERIENNE DE JARAY,** and **DARREL R. OSWALD**, | Case No. 3:19-cv-86-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **LATTICE SEMICONDUCTOR CORPORATION**, | |
| Defendant. | |

Lydia Anderson-Dana and Elizabeth K. Bailey, STOLL STOLL BERNE LOKTING & SHLACHTER PC, 209 SW Oak Street, Suite 500, Portland, OR 97204; Joshua A. Berman, PAUL HASTINGS LLP, 200 Park Avenue, New York, NY 10166; and Isaac S. Glassman, Scott T. Weingaertner, and Kimberly Anne Havlin, WHITE & CASE LLP, 1221 Avenue of the Americas, New York, NY 10020. Of Attorneys for Plaintiffs.

Nicholas F. Aldrich, Jr., Scott D. Eads, and Jason A. Wrubleski, SCHWABE, WILLIAMSON & WYATT, PC, 1211 SW 5th Avenue, Suite 1900, Portland, OR 97204; and Derek F. Foran, STEPTOE & JOHNSON LLP, One Market Plaza, Steuart Tower, Suite 1070, San Francisco, CA 94105; James P. Bennett, THE NORTON LAW FIRM PC, 299 Third Street, Suite 200, Oakland, CA 94607. Of Attorneys for Defendant

**Michael H. Simon, District Judge.**

Steven A.W. de Jaray, Perienne de Jaray, and Darrell R. Oswald (collectively, Plaintiffs)

originally filed this lawsuit against Defendant Lattice Semiconductor Corp. (Lattice), asserting

claims arising out of sales transactions between Lattice and Apex-Micro Manufacturing

PAGE 1 – OPINION AND ORDER

Corporation (Apex). Plaintiffs sought damages for false advertising under the Lanham Act, negligence, fraud, breach of the implied duty of good faith and fair dealing, and negligent misrepresentation. Plaintiffs were shareholders of Apex. Plaintiffs contended that Lattice failed properly to advertise, or inform Plaintiffs and Apex about, the export-controlled status of integrated circuits (also described as programmable logic devices) that Lattice sold to Apex, particularly two models of integrated circuits that were seized by Canadian border authorities in December 2008 (the 2ICs). The Canadian authorities suspected the 2ICs of being export controlled and requiring an export license (or permit) that Apex failed to obtain before exporting the 2ICs. Plaintiffs asserted that the seizure and subsequent civil and criminal investigations of Steven and Perienne de Jaray resulted from Lattice's material misrepresentations and omissions and caused reputational injury to Plaintiffs. Plaintiffs further stated that Lattice made misrepresentations through Lattice's datasheets and other documentation that the 2ICs were not export controlled after privately reclassifying them as export-controlled items and while privately representing to government investigators that the 2ICs were export controlled.

Before the Court is Plaintiffs' motion for leave to file a Second Amended Complaint. Plaintiffs propose to add as plaintiffs Apex and American Micro-Fuel Design Corp. (AMFD). In Plaintiffs First Amended Complaint, they assert a claim for breach of the duty of good faith and fair dealing against the individual named defendants. In the proposed Second Amended Complaint, they no longer assert that claim against the individual defendants. Instead, they assert the claim for breach of the duty of good faith and fair dealing only against Apex. The proposed Second Amended Complaint also adds a request for punitive damages. For the reasons discussed below, the Court grants in part Plaintiffs' motion.

## STANDARDS

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (cleaned up). The purpose of the rule "is 'to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a motion to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Generally, however, "[a]bsent prejudice, or a strong showing of any of the remaining [four] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (alterations added, emphasis in original). When weighing the factors, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

## PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint in this case in Multnomah County Circuit Court in December 2018. On January 17, 2019, Lattice removed the case to this U.S. District Court. On February 22, 2019, Lattice filed a motion to dismiss Plaintiffs' complaint. One of Lattice's arguments was that Plaintiffs lacked standing to pursue claims and seek damages on behalf of Apex. Plaintiffs responded that Apex did not need to be joined as a plaintiff because Plaintiffs were "the real parties in interest."

While Lattice's motion to dismiss was pending, on August 16, 2019, Plaintiffs filed a motion for leave to file a First Amended Complaint. Lattice opposed, arguing in part that amendment was futile because Plaintiffs lacked standing and could not bring claims on behalf of Apex. In granting Plaintiffs' motion to amend, the Court stated that "Plaintiffs are limited to injuries personally suffered and may not recover for injuries to Apex, a corporation." *de Jaray v. Lattice Semiconductor Corp.*, 2019 WL 4580041, at *6 (D. Or. Sept. 20, 2019) (citing cases). The Court specifically noted that the proposed amended complaint did not add Apex as a separate plaintiff but that Plaintiffs "allege their own personal injuries" and may have "standing to assert their claims for their own injuries." *Id.* Thus, the Court denied Lattice's motion, "at least at [that] stage of the litigation." *Id.* Plaintiffs filed their First Amended Complaint on September 23, 2019.

On January 30, 2020, the Court entered a case management schedule, setting deadlines for initial disclosures, fact discovery, expert discovery, and dispositive motions. On October 13, 2020, February 3, 2021, January 14, 2022, and July 15, 2022, the Court adopted the parties' joint proposals to amend the case schedule, extending some or all of these deadlines. The final deadlines had fact discovery closing March 25, 2022, expert discovery closing August 10, 2022,

and dispositive motions due by August 25, 2022. On April 27, 2022, the Court set pretrial
conferences for November 21 and 28, 2022 and a jury trial to begin on December 12, 2022.

Lattice filed three motions and partial motions for summary judgment on a rolling basis,
and Plaintiffs filed one motion for partial summary judgment. The Court resolved the first of
Lattice's motions. During the litigation of Lattice's remaining summary judgment motions, it
became clear that Plaintiffs believed they could bring claims seeking damages related to defunct
business entities, including Apex, because Plaintiffs' closely-held companies had dissolved or
otherwise were no longer viable business entities. The Court provided the parties with a tentative
opinion in which the Court explained why Plaintiffs' position was incorrect. The Court also
noted that a response to summary judgment was not the proper time to amend a pleading and, in
any event, Plaintiffs had not moved for leave to amend or otherwise explained why adding the
corporate entities met the requirements of Rule 15 or 16 of the Federal Rules of Civil Procedure.
After discussing the issue at oral argument, the Court allowed Plaintiffs the opportunity to
restore the business entities and move to amend. The Court struck the trial date and stayed all
pretrial deadlines and the remaining summary judgment motions.

Plaintiffs have since restored two entities, Apex and AMFD. Plaintiffs now propose to
add Apex and AMFD as plaintiffs in the Second Amended Complaint, which also seeks to add a
request for punitive damages and clarify against whom the claim for good faith and fair dealing
is asserted. Plaintiffs do not otherwise propose any substantive changes in their Second Amended
Complaint.

## DISCUSSION

### A.  Governing Standard

The parties dispute whether Rule 15 or Rule 16 governs Plaintiffs' motion to amend. The
case schedules set by the Court did not include a deadline for amending pleadings or adding

parties. Lattice argues that despite this, Rule 16 still applies because Plaintiffs' proposal to amend the complaint necessarily will require altering the case schedule by requiring additional discovery and potentially additional motion practice relating to the new plaintiffs.

The Ninth Circuit is clear that when a court has entered a case scheduling order pursuant to Rule 16 of the Federal Rules of Civil Procedure and a party requests to amend a pleading after the expiration of the deadline set by the court, the party's request is controlled by Rule 16(b), not by Rule 15(a). *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). In those circumstances, the party requesting an amendment must first show "good cause" under Rule 16(b) and then show that its proposed amendment is proper under Rule 15(a). *Johnson*, 975 F.2d at 608.

In considering the standard of review for a motion to amend the pleadings, the Ninth Circuit confirmed that a district court "should address the issue under Federal Rule of Civil Procedure 16 [when] it ha[s] filed a pretrial scheduling order that established a timetable for amending the pleadings." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *see also Johnson*, 975 F.2d at 607-08 ("Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards controlled."). But the issue is less clear when a specific deadline for amending the pleadings has not been set in a court order, such as in this case.

Some courts have held that when a "specific deadline was not set in the scheduling order, the standards of Rule 15 govern Plaintiffs' motion, and the good cause required by Rule 16 is inapplicable." *See Soto v. Castlerock Farming & Transp., Inc.*, 2011 WL 3489876, at *2 (E.D. Cal. Aug. 9, 2011); *see also Sumotext Corp. v. Zoove, Inc.*, 2017 WL 2774382, at *2 (N.D. Cal.

June 26, 2017) ("Where, as here, the Court's scheduling orders do not set a deadline for amendments to the pleadings, a motion for leave to amend is evaluated under Federal Rule of Civil Procedure 15."); *Santa Clara Valley Water Dist. v. Olin Corp.*, 2009 WL 667429, at *4 (N.D. Cal. Mar. 13, 2009) ("Because the court's case scheduling orders imposed no deadline for amending the pleadings, Olin is *not* required to show good cause for its desire to amend its counterclaim." (emphasis in original)). These courts rely on the Ninth Circuit's emphasis in *Coleman* and *Johnson* that Rule 16 applies when a deadline set by the court has expired.

Other courts, however, apply Rule 16 even when a specific deadline has not been set, when the proposed amendment "would require modifications to the scheduling order." *See James v. J2 Cloud Servs. Inc.*, 2019 WL 184330, at *3 (C.D. Cal. Jan. 14, 2019) (applying Rule 16 even though the case schedule set by the court "does not set a specific deadline for amending the complaint but otherwise sets a deadline for completing discovery and a briefing schedule for defendant's motion to dismiss and motion for summary judgment"); *see also Jones v. City of Tulare*, 2018 WL 6271577, at *3 (E.D. Cal. Nov. 30, 2018) ("Although the Court's scheduling Order does not set a specific deadline for amending the complaint, Plaintiffs' motion to amend the complaint is governed by Rule 16(b)(4) because granting Plaintiffs leave to amend the complaint would require amending other dates in the Scheduling Order."); *Paz v. City of Aberdeen*, 2013 WL 6163016, at *3 (W.D. Wash. Nov. 25, 2013) (applying Rule 16 because the motion to amend "if granted, necessarily requires modification of the scheduling order" to allow for additional discovery and extend the deadline for dispositive motions).

The Court has considered the facts and circumstances of this case and declines to apply Rule 16's good cause standard. The Court never set a deadline for amending the pleadings or adding parties, and Plaintiffs are not proposing to add strangers to the case as parties or add new

facts or theories but simply to add corporate entities who are intertwined with Plaintiffs and, as discussed further below, about whom the parties have litigated extensively.

**B.  Application of Rule 15**

**1.  AMFD**

The proposed Second Amended Complaint collectively defines AMFD, Apex-Micro Manufacturing Corporation, Apex Micro America, Inc., and Caliber Component Solutions, Inc. as "Apex," even though Apex Micro America, Inc. and Caliber Component Solutions, Inc. are not proposed plaintiffs. Confusingly, Apex-Micro Manufacturing Corporation also is defined as "Apex" in the proposed Second Amended Complaint.

After defining Plaintiffs, Apex (twice), and AMFD, the proposed Second Amended Complaint does not distinguish between any plaintiff in the subsequent allegations but instead references "Plaintiffs" as a group. Some allegations include a specific singular plaintiff, but otherwise, the allegations refer to all plaintiffs together. The proposed Second Amended Complaint does not allege any specific facts relating to AMFD other than its corporate status and that it was harmed.

Lattice notes that it does not have any relationship with AMFD and that they are "strangers." Plaintiffs argue that although there are no allegations specifically relating to AMFD in the Second Amended Complaint or First Amended Complaint, allegations relating to AMFD were included in the original complaint. Although that may be relevant for notice purposes in arguing relation back, it is irrelevant to whether AMFD states a claim. Plaintiffs also argue that AMFD is a related entity to Apex and that although AMFD did not receive the datasheets, AMFD was affected the same way by Lattice's fraud because it contracted to buy assemblies containing Lattice's parts. Plaintiffs assert that Lattice knew Apex was a product designer and manufacturer and Lattice should have "expected" Apex's affiliates and customers to rely on

Lattice's representations. The problem with this argument by Plaintiffs, besides opening the door to literally all of Apex's "affiliates and customers" as potential plaintiffs, is that Plaintiffs have not *alleged* any of these facts. Although amendment should be freely given, there needs to be *some* facts alleged to give the parties and the Court an opportunity to analyze whether claims by a proposed new plaintiff are sustainable. Simply asserting that AMFD is a related entity to Apex is not sufficient. Plaintiffs also contend that discovery has included information relating to AMFD. That may go to potential prejudice, but it does not speak to futility or whether the proposed complaint states a claim by AMFD.

AMFD and Apex are distinct legal entities and Plaintiffs must allege facts specific to each. *Cf. McKeon v. Cent. Valley Cmty. Sports Found.*, 2018 WL 6436256, at *4 (E.D. Cal. Dec. 7, 2018) (noting that allegations are factually deficient when a "complaint lumps defendants together and fails to adequately distinguish claims and alleged wrongs among defendants" (citing cases)). Plaintiffs may not simply add AMFD without adding any facts to explain AMFD's role, how it encountered Lattice's alleged conduct, how it was injured by the alleged conduct (besides a conclusory allegation that it was "destroyed"), or a single allegation specific to AMFD. The proposed Second Amended Complaint fails to state a claim and is futile with respect to claims by AMFD.

### 2. Apex

Lattice argues that all factors of Rule 15 counsel against permitting amendment to add Apex. Lattice also argues that Rule 15's liberal construction is not applicable when amendment is sought in response to summary judgment. Plaintiffs respond that amendment in response to summary judgment may be inappropriate when new *claims* or *facts* are sought to be added to avoid summary judgment, but adding *parties* is permissible under Rule 21 of the Rules of Federal Procedure *at any time*, including at trial. Plaintiffs also contend that Lattice has litigated

this case, including with extensive fact and expert discovery, as a $140 million-plus lawsuit and adding Apex to the caption makes no difference. The Court considers the Rule 15 factors.

### a. Undue Delay

This factor considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen*, 465 F.3d at 953. This factor, however, is not dispositive—the Ninth Circuit has "noted that delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981); *see also Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend."). "The mere fact that an amendment is offered late in the case is not enough to bar it." *Webb*, 655 F.2d at 980 (cleaned up).

Plaintiffs' proposed amendment does not add any new facts or theories. It adds Apex as a plaintiff, but Apex has already been included in the underlying facts and claims, and thus the primary concerns raised in *AmerisourceBergen* are not implicated. To the extent that Plaintiffs should more quickly have understood the legal status that they did not personally "own" the corporate damages of Apex and thus could not personally claim those damages and were running afoul of the Court's decision on Plaintiffs' original motion to amend, the Court finds this fact ameliorated because the parties included Apex in their fact and expert discovery. This factor is neutral.

### b. Risk of Undue Prejudice

This is the most important factor in the Rule 15 analysis. *See Eminence Capital*, 316 F.3d at 1052. Lattice argues that the amendment is prejudicial because allowing Apex to join as a plaintiff would require additional discovery and create undue burden.

This case is unusual in that Apex is not a stranger to the case. Apex is a closely-held corporate entity of Plaintiffs. Indeed, the crux of Plaintiffs' claims is that Lattice's interactions with Apex were fraudulent and tortious and otherwise wrongful and that because of Plaintiffs' close association with Apex, Plaintiffs also were harmed. The facts underlying Plaintiffs' claims are inextricably intertwined with Apex. Lattice could not litigate the claims against Plaintiffs without also litigating information relating to Apex.

Additionally, the Court has presided over several discovery disputes and gave extensive consideration to the summary judgment motions in this case, resolving the first motion and issuing a tentative opinion on the other three. It is evident from the Court's experience that this case has been heavily litigated. Lattice litigated this case, as Plaintiffs argue, like a $140 million-plus lawsuit, which necessarily involved alleged damages to a corporation. Further, the expert discovery taken included Apex's damages and the fact discovery taken included obtaining Apex's documents and significant deposition testimony relating to activities of the corporation.[1]

The Court is not persuaded by Lattice's current argument that it crafted the size and scope of discovery in this case based on its understanding that damages were limited to those "personally suffered" by Plaintiffs, which is a "far cry" from the "nearly $200 million" in alleged corporate damages.[2] Although the Court expressly precluded Plaintiffs from seeking damages on

---

[1] Plaintiffs describe that in addition to the 10 special interrogatories served on each individual plaintiff, Lattice has served Plaintiffs with 100 requests for production, 53 interrogatories, and 272 requests for admission, served 10 third-party subpoenas, and then sought document and deposition discovery from an additional five witnesses in Canada, including the Canadian DOJ, from which Lattice received all documents that had been seized from Apex's premises.

[2] For example, in a motion to compel filed by Lattice two years after the Court denied Plaintiffs the ability to pursue corporate damages, Lattice contended that this case involves "over $140 million in damages" and argued that the Court should consider that amount in controversy in compelling the requested discovery. *See* ECF 93 at 10, 12.

behalf of Apex, the parties still obtained significant lay and expert discovery relating to corporate damages and other corporate information. Moreover, the theory of this case, the claims, and the underlying facts all remain the same. This case is distinguishable from those cited by Lattice in which new claims or facts were sought to be added in response to a motion for summary judgment.

It is unclear how much additional discovery would be needed, other than perhaps a Rule 30(b)(6) deposition. Lattice argues that it will need to take the depositions of at least nine more witnesses, who all purportedly will give testimony that refutes various aspects of Plaintiffs' version of what happened between Lattice and Apex. It is puzzling why these witnesses would suddenly now become essential but would not previously have been considered important when Plaintiffs are not proposing any changes to their theory of the case or underlying facts and Lattice previously considered this case to be seeking more than $140 million without Apex as a plaintiff. If these witnesses would have refuted Plaintiffs' claims and stopped a $140 million case, it seems they would have been just as important before adding Apex as a plaintiff. Regardless, if Lattice believes that it needs some additional discovery the Court will reopen discovery. The Court, however, does not find Lattice's claimed need for additional discovery to be unduly prejudicial. *See Navarro v. Eskanos & Adler*, 2006 WL 3533039, at *3 (N.D. Cal. Dec. 7, 2006) (rejecting claim of prejudice, explaining: "Defendants argue that amending the complaint at this point will require them to reevaluate their strategy and incur additional costs in responding to the new claims. This seems far-fetched. The basic fact pattern will remain the same. All that is being added is another legal string to the same old bow.").

### c.  Bad Faith

Bad faith may be shown by a "wrongful motive," *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987), or when the proposed claims are baseless and brought to prolong

the litigation, *see Griggs*, 170 F.3d at 881. Lattice argues that Plaintiffs acted in bad faith because they did not previously amend to add Apex, even though the Court specifically warned that Plaintiffs could not seek damages on behalf of the corporation. Lattice contends that seeking to amend after summary judgment and the Court's tentative opinion rejecting Plaintiffs' claim to those damages shows bad faith. It may be that under some circumstances seeking to amend to avoid summary could evince bad faith. The Court, however, finds that under the circumstances of this case, Plaintiffs' did not act in bad faith in proposing the amendment.

### d. Futility

"[L]eave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada Cty*, 119 F.3d 1385, 1393 (9th Cir. 1997)); *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988))). The standard for assessing whether a proposed amendment is futile is the same as the standard imposed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see, e.g.*, *Miller*, 845 F.2d at 214, although "viewed through the lens of the requirement that courts freely give leave to amend when justice so requires." *Barber v. Select Rehab., LLC*, 2019 WL 2028519, at *1 (D. Or. May 8, 2019) (quotation marks omitted)."Futility includes the inevitability of a claim's defeat on summary judgment." *California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004) (cleaned up). Lattice argues that the proposed amendment is futile because all causes of action fail as a matter of law.

### i. Relation back

Lattice argues that all of Apex's claims are time barred because the proposed amendments do not relate back to the original complaint. An amendment relates back "only when: 1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996). Lattice contends that none of these factors are met.

The Court has already rejected Lattice's argument regarding undue prejudice. Regarding notice, the Second Amended Complaint is identical to the First Amended Complaint, except for the caption, defining the new plaintiffs, and adding punitive damages. It also retains the general facts, claims, and legal theories from the original complaint.

"In deciding whether an amendment relates back to the original claim, notice to the opposing party of the existence and involvement of the new plaintiff is the critical element." *Avila v. INS*, 731 F.2d 616, 620 (9th Cir. 1984). Plaintiffs' claims have always been based primarily on the interaction between Lattice and Apex. Lattice thus was on sufficient notice of the *existence and involvement* of Apex with regard to Plaintiffs' claims and that Apex was a potential party. Indeed, Lattice challenged Plaintiffs' proposed First Amended Complaint as futile for asserting claims on behalf of Apex and the Court clarified that Plaintiffs could not recover for damages suffered by Apex. This is unlike cases in which the defendant "was not aware of the possible existence of another claimant" until after the limitations period. *Cadwalder v. United States*, 45 F.3d 297, 302 (9th Cir. 1995).

Finally, there is the required identity of interests when the "circumstances giving rise to the claim remain[ ] the same as under the original complaint." *Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir. 1982); *see also Immigrant Assistance Project of Los Angeles*

*Cnty. Fed'n of Lab. (AFL-CIO) v. INS*, 306 F.3d 842, 858 (9th Cir. 2002) ("Because the original individual plaintiffs and the current individual plaintiffs are 'similarly situated,' the identity-of-interest requirement of Rule 15(c) is also met in the present case."). The "identity of interest typically means that parties are 'so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.'" *Young v. Lepone*, 305 F.3d 1, 14-15 (1st Cir. 2002) (quoting *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 197 (3d Cir. 2001)). "The substitution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based." *Staren v. Am. Nat'l Bank & Trust Co.*, 529 F.2d 1257, 1263 (7th Cir. 1976) (reversing district court and permitting the substitution of a corporation for two individuals). The identity of interest requirement "ensures that the old and new plaintiffs are sufficiently related so that the new plaintiff was in effect involved in the proceedings unofficially from an early stage." *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1309 (D.C. Cir. 1982) (cleaned up).

The circumstances here giving rise to Plaintiffs' claims and Apex's claims are the same. The amount and type of damages allowed are different. The Court's tentative opinion at summary judgment rejected Plaintiffs' contention that they are legally entitled to pursue as personal to them injury stemming from business losses relating to Apex. Thus, Plaintiffs' damages are limited, including to items such as personal property damaged during government search and seizure. But the underlying circumstances—the alleged misrepresentations by Lattice in their datasheets, Apex's alleged reliance on the datasheets in considering the 2ICs as not export controlled, the alleged collusion by Lattice with the government entities, and so forth, remain the same. In other words, the "the conduct, transaction or occurrence set forth or

attempted to be set forth in the original pleading" giving rise to the claims remain the same. *Staren*, 529 F.2d at 1263. The Court finds that the proposed amendment relates back to the original complaint. The Court now considers Lattice's challenges to the individual causes of action.

### ii. Breach of contract

Lattice contends that Apex's breach of contract claim is time barred because it is subject to the four-year statute of limitations for contracts for sales contracts and no discovery rule applies. Plaintiffs respond that the statute of limitations is tolled by Lattice's fraudulent concealment. Fraudulent concealment occurs when someone "wrongfully conceals material facts and thereby prevents discovery of his wrong or of the fact that a cause of action has accrued against him." *Chaney v. Fields Chevrolet Co.*, 264 Or. 21, 27 (1972) (quoting *What Constitutes Concealment which Will Prevent Running of Statute of Limitations*, 173 A.L.R. 576, 578 (1948)). In cases of fraudulent concealment, "the statute of limitations will be tolled until the plaintiff discovered, or reasonably should have discovered, the breach." *Waxman v. Waxman & Assoc., Inc.*, 224 Or. App. 499, 512 (2008). Plaintiffs argue that while Lattice indicated that the 2ICs were case temperature rated and thus not export controlled in the datasheets, it secretly was telling government entities that the 2ICs were ambient temperature rated and thus export controlled. Therefore, Plaintiffs argue, Lattice breached its duty of good faith and fair dealing, particularly because Plaintiffs contend that Lattice knew Plaintiffs were being investigated by authorities while Lattice was making these divergent representations. This is sufficient at this stage to raise an issue of fact with respect to fraudulent concealment and withstand Lattice's futility challenge.

Lattice also argues that no claim for breach of the implied warranty of good faith and fair dealing lies for contract *formation* as opposed to contract *performance*, and the proposed claim

involves the former. Lattice contends that Mr. de Jaray testified that Apex would not have issued its purchase orders until after the company reviewed the datasheets, and thus Lattice argues that the representations in the datasheets could only have induced contract formation and were not a part of the performance of the contract. Plaintiffs respond that they are not alleging fraudulent inducement but breach of contract of performance. Plaintiffs note that Apex's purchase orders attached standard terms and conditions that stated that all items furnished thereunder will "conform strictly" to all applicable drawings and specifications, which Plaintiffs argue means that the 2ICs needed to conform to the datasheets. Plaintiffs also allege that during the performance of the contract, Lattice privately told government entities that the 2ICs were ambient temperature rated when they were actually case temperature rated. Lattice fails to show that there are no set of facts that could be alleged to show that this claim is only about contract formation and not performance. Thus, the Court agrees with Plaintiffs that this claim as is not futile.

### iii. Lanham Act

Lattice argues that the Lanham Act is futile for the reasons discussed in the Court's tentative summary judgment opinion—that like Plaintiffs, Apex is unable to show proximate cause because its injuries do not flow directly from the alleged misrepresentations. Plaintiffs argue that the Court should reconsider its analysis from its tentative opinion because they do not have to show that injury to any plaintiff flowed directly from the alleged misrepresentations and proximate cause generally is an issue of fact for the jury.

The Supreme Court has explained that to show proximate cause under the Lanham Act, "a plaintiff . . . ordinarily must show economic or reputational injury *flowing directly* from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 572 U.S. 118, 133 (2014) (emphasis added). This "showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id.* at 133-34. The Court found that the alleged injury to Plaintiffs was too attenuated and did not directly flow from Lattice's alleged misrepresentations in its datasheets.

Plaintiffs' reliance on *Lexmark* for the contention that proximate cause does not require direct injury is misplaced. In *Lexmark*, the Supreme Court reiterated the rule that proximate cause generally requires a direct connection but then explained why it applied an exception under the unusual circumstances present.

> To be sure, on this view, the causal chain linking Static Control's injuries to consumer confusion is not direct, but includes the intervening link of injury to the remanufacturers. Static Control's allegations therefore might not support standing under a strict application of the general tendency not to stretch proximate causation beyond the first step. But the reason for that general tendency is that there ordinarily is a discontinuity between the injury to the direct victim and the injury to the indirect victim, so that the latter is not surely attributable to the former (and thus also to the defendant's conduct), but might instead have resulted from any number of other reasons. That is not the case here. Static Control's allegations suggest that if the remanufacturers sold 10,000 fewer refurbished cartridges because of Lexmark's false advertising, then it would follow more or less automatically that Static Control sold 10,000 fewer microchips for the same reason, without the need for any speculative proceedings or intricate, uncertain inquiries. In these relatively unique circumstances, the remanufacturers are not more immediate victims than Static Control.

*Lexmark*, 572 U.S. 139-40 (cleaned up).

The same unusual circumstances are not present in this case. The Court declines to reconsider its analysis regarding the Lanham Act claims of Plaintiffs from the tentative opinion and similarly finds that the Lanham Act claim of Apex will inevitably fail at summary judgment. "Although causation often presents a question of fact for the jury, where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of

fact." *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (quotation marks omitted); *see also Benefiel v. Exxon Corp.*, 959 F.2d 805, 808 (9th Cir. 1992) (recognizing that "proximate or legal causation normally presents an issue for the trier of fact to resolve" but that "federal law recognize[s] that where causation cannot reasonably be established" then "the question of proximate cause is one for the court"). Plaintiffs may not bring this claim in the Second Amended Complaint.

### iv.  Negligence

Lattice argues that the negligence claim is futile because of Oregon's economic loss doctrine. Lattice notes that the Court's tentative summary judgment opinion concluded that the economic loss doctrine applied and Plaintiffs did not dispute the Court's analysis. The Court's analysis, however, was based on Plaintiffs not being able to "stand in the shoes of Apex" and thus the Court did not consider whether Apex and Lattice were in a special relationship, as argued by Plaintiffs. Thus, *Apex's* negligence claim will not *inevitably* fail at summary judgment, *see Neville Chem.*, 358 F.3d at 674, and there are issues of fact that preclude resolving it at this stage of the litigation.

Lattice also argues that Oregon's ten-year ultimate statute of repose, Oregon Revised Statutes § 12.115(1), applies to bar this claim. Lattice contends that this claim is based on Apex purchase orders placed on December 10, 2008, and this lawsuit was filed on December 18, 2018.

Oregon's statute of repose provides: "In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of." Or. Rev. Stat. § 12.115(1). By its terms, it does not apply to claims seeking only economic loss, which Apex's claim does. *See also Marshall v. PricewaterhouseCoopers, LLP*, 316 Or. App. 416, 430 (2021) ("Thus, we conclude that ORS 12.115(1) is applicable to actions for 'negligent injury to person or property,' but not to

actions seeking only recovery for economic loss, as those terms have been defined in our case law.").

### v. Fraud

 Lattice argues that the fraud claim is futile because Apex will not be able to show Lattice's intent to induce action, or intent that Apex act upon, Lattice's representations. Lattice had previously moved for summary judgment, arguing only that Plaintiffs could not show Lattice's intent to deceive, and in the Court's tentative opinion on summary judgment the Court found an issue of fact on intent to deceive. Now Lattice argues that the fraud claim must fail on the separate element that Lattice intentionally or was recklessly indifferent to induce reliance. Lattice also disagrees with the Court's tentative opinion on intent to deceive.

The Court declines to reconsider its tentative conclusion regarding intent to deceive. Regarding inducing reliance, the proposed amendment does not suggest no set of facts on which Apex could show that Lattice intended that its clients act upon Lattice's representations in its datasheets. Indeed, in response to Lattice's opposition to the motion to amend, Plaintiffs provide evidence and argument disputing this issue. Lattice fails to show that this claim inevitably will fail at summary judgment. *See Neville Chem.*, 358 F.3d at 674.

### 3. Punitive Damages

Under Oregon law, punitive damages are allowed if the plaintiff proves "by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." Or. Rev. Stat. § 31.730(1). Plaintiffs argue that punitive damages should be allowed because in its tentative opinion the Court found an issue of fact on whether Lattice acted recklessly with regard to the element of scienter, primarily based on Lattice's representations in its datasheets relating

to case temperature ratings. Lattice disputes that finding by the Court and argues that, regardless, such a finding is insufficient to support Plaintiffs' burden of showing a reckless and outrageous indifference to a highly unreasonable risk of harm *and* a conscious indifference to the health, safety, and welfare of others. Plaintiffs contend that representations about the case or ambient temperature rating relates to the export controlled status of the products and has serious potential consequences. Lattice disputes this, arguing that no other person in the industry looks to datasheets or case or temperature rating to obtain information about export control status.

These are fact disputes that are not appropriate to resolve at this stage of the litigation nor by a court. If case or ambient temperature ratings are information that it is reasonable to rely on for export control status, if datasheets are a reasonable source of that information, and if Lattice knowingly or recklessly published inaccurate temperature information, then a rational jury might find that to be reckless disregard of a highly unreasonable risk of harm. Then continuing to publish inaccurate datasheets could be viewed by a jury as acting with a conscious indifference to the health, safety, and welfare of others because it could lead to legal jeopardy for illegally exporting goods. Although the burden is high, there is clear and convincing evidence that the datasheets stated that the 21Cs were case temperature rated. The dispute is whether that representation was of any import. Lattice's position asks the Court to view the facts in the light most favorable to Lattice and ignore disputed issues of fact. That is inappropriate in a motion to amend the pleadings or a future motion for summary judgment.

**CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion to Amend, ECF 231. Plaintiffs may file a Second Amended Complaint that adds claims by Apex for breach of the implied duty of good faith and fair dealing, negligence, and fraud and that requests

punitive damages. Plaintiffs may not bring a claim by Apex under the Lanham Act or any claims by AMFD.

**IT IS SO ORDERED**.

DATED this 17th day of May, 2023.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge