IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STEVEN A.W. DE JARAY, PERIENNE DE JARAY,** and **DARREL R. OSWALD**,<br><br>        Plaintiffs,<br><br>    v.<br><br>**LATTICE SEMICONDUCTOR CORPORATION**,<br><br>        Defendant. | Case No. 3:19-cv-86-SI<br><br>**OPINION AND ORDER** |

Lydia Anderson-Dana and Elizabeth K. Bailey, STOLL STOLL BERNE LOKTING & SHLACHTER PC, 209 SW Oak Street, Suite 500, Portland, OR 97204; Joshua A. Berman, Laura Logsdon, Elizabeth Moore, and Zachary Melvin, PAUL HASTINGS LLP, 200 Park Avenue, New York, NY 10166; and Isaac S. Glassman, Scott T. Weingaertner, and Kimberly Anne Havlin, WHITE & CASE LLP, 1221 Avenue of the Americas, New York, NY 10020. Of Attorneys for Plaintiffs.

Nicholas F. Aldrich, Jr., Scott D. Eads, and Jason A. Wrubleski, SCHWABE, WILLIAMSON & WYATT, PC, 1211 SW 5th Avenue, Suite 1900, Portland, OR 97204; and Derek F. Foran, STEPTOE & JOHNSON LLP, One Market Plaza, Steuart Tower, Suite 1070, San Francisco, CA 94105; James P. Bennett, THE NORTON LAW FIRM PC, 299 Third Street, Suite 200, Oakland, CA 94607. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Original Plaintiffs Steven A.W. de Jaray, Perienne de Jaray, and Darrell R. Oswald

(collectively, "Individual Plaintiffs") brought this lawsuit against Lattice Semiconductor Corp.

(Lattice), asserting claims arising out of sales transactions between Lattice and Apex-Micro

Manufacturing Corporation (Apex). Individual Plaintiffs sought damages for False Advertising under the Lanham Act, Negligence, Fraud, Breach of the Implied Duty of Good Faith and Fair Dealing, and Negligent Misrepresentation. Individual Plaintiffs were shareholders of Apex. Individual Plaintiffs contended that Lattice failed properly to advertise or inform Individual Plaintiffs and Apex about the export-controlled status of integrated circuits (also described as programmable logic devices) that Lattice sold to Apex, particularly two models of integrated circuits that were seized by Canadian border authorities in December 2008 (the "2ICs"). The Canadian authorities suspected the 2ICs of being export controlled and requiring an export license (or permit) that Apex failed to obtain before exporting the 2ICs. Individual Plaintiffs asserted that the seizure and subsequent civil and criminal investigations of Steven and Perienne de Jaray resulted from Lattice's material misrepresentations and omissions to Individual Plaintiffs and Apex and caused reputational injury to Individual Plaintiffs. Individual Plaintiffs further stated that Lattice made representations to them through Lattice's datasheets and other documentation that the 2ICs were not export controlled after privately reclassifying them as export controlled items while privately representing to government investigators that they were export controlled.

Lattice filed three motions for summary judgment and partial summary judgment, and Individual Plaintiffs filed a cross-motion for partial summary judgment. The Court denied Lattice's first motion for partial summary judgment, which was based on Lattice's affirmative defenses asserting the statute of limitations, the doctrine of laches, the *Noerr-Pennington*[1]

---

[1] The *Noerr-Pennington* doctrine derives its name from two cases, *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965). The Supreme Court expanded the doctrine in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).

doctrine, and Oregon's litigation privilege. The Court provided the parties with a tentative opinion on Lattice's second and third motions for summary judgment and Individual Plaintiffs' cross-motion for summary judgment. In those motions Lattice requested summary judgment on all Individual Plaintiffs' claims and against Individual Plaintiffs' request for damages on behalf of Apex and other corporations owned by Individual Plaintiffs. In their cross-motion, Individual Plaintiffs requested summary judgment on their Lanham Act claim and also moved against Lattice's affirmative defense of unclean hands.

In its tentative opinion, the Court indicated it was inclined to deny Individual Plaintiffs' motion and grant in part Lattice's motion. Among other things, the Court indicated that it was inclined to grant the portion of Lattice's motion against Individual Plaintiffs' claim of damages for harm to Apex and other corporate entities because claims for harms suffered by those corporate entities were not personal to Individual Plaintiffs. The Court also indicated that it was inclined to grant Lattice's motion against Individual Plaintiffs' claim under the Lanham Act.

At oral argument, the Court set a briefing schedule for Individual Plaintiffs to file a motion to amend their complaint to add corporate entities as additional plaintiffs. Individual Plaintiffs moved to amend to add Apex and American Micro-Fuel Design Corp. (AMFD).[2] The Court denied Individual Plaintiffs' motion to add AMFD, but granted Individual Plaintiffs' motion to add Apex (Individual Plaintiffs and Apex are collectively referred to as "Plaintiffs"). On May 24, 2023, Plaintiffs filed their Second Amended Complaint. In the Second Amended Complaint, Plaintiffs' assert their contractual claim for breach of the duty of good faith and fair

---

[2] The summary judgment evidence and argument related to "American Micro-Fuel Device Corp." but Plaintiffs' proposed Second Amended Complaint named "American Micro-Fuel Design Corp.," and both entities were referenced as "AMFD." For purposes of this Opinion and Order, the Court treats these two entities as the same entity.

dealing only on behalf of the new corporate plaintiff, Apex. Plaintiffs also did not pursue their claim under the Lanham Act. Plaintiffs' remaining claims are brought by all Plaintiffs, including Apex.

The Second Amended Complaint moots much of the pending motions. The Court now resolves what remains of the pending motions for summary judgment, in the context of the Second Amended Complaint. For the reasons discussed below, the Court denies as moot one of Lattice's motions and grants in part the other motion by Lattice, and denies as moot Individual Plaintiffs' motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the Court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable

inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## DISCUSSION

Lattice moves for summary judgment on Individual Plaintiffs' negligence and negligent misrepresentation claims, arguing that Individual Plaintiffs fail to show a special relationship or physical injury. Lattice also moves against Individual Plaintiffs' fraud claim, arguing that Individual Plaintiffs fail to show clear and convincing evidence of fraudulent intent. Finally, Lattice moves against Individual Plaintiffs' claim for damages allegedly suffered only by corporations owned by Individual Plaintiffs.[3]

---

[3] The Court denies as moot the portion of Lattice's motion challenging Individual Plaintiffs' claim based on the implied contractual duty of good faith and fair dealing, because the Second Amended Complaint no longer asserts a contractual claim by Individual Plaintiffs. The Court also denies as moot Lattice's motion, ECF 175, challenging Individual Plaintiffs' claim under the Lanham Act, because the Second Amended Complaint no longer asserts a claim under the Lanham Act. The Court further denies as moot Individual Plaintiffs' cross-motion for partial summary judgment, ECF 156, because it requests summary judgment in favor of Individual

**A. Individual Plaintiffs' Damages on Behalf of Corporations**

Lattice moves to preclude Individual Plaintiffs from seeking damages that Lattice contends were suffered only by corporations owned by one or more Individual Plaintiffs. Although Apex is now a plaintiff seeking its own damages, the Court clarifies that Individual Plaintiffs, who continue to assert tort and statutory claims, may not seek damages on behalf of any corporate entity, including Apex.

Individual Plaintiffs argue first that the claims are not corporate claims but are instead personal claims—that Mr. and Ms. de Jaray are the ones who were investigated and prosecuted and that the professional reputations of all three Individual Plaintiffs were ruined causing them harm, not that Apex or other corporations were damaged and that Individual Plaintiffs were harmed only by a loss in share price. Individual Plaintiffs, however, conflate some of their allegations and evidence.

Individual Plaintiffs provide evidence that Lattice and Apex were in a business relationship and Lattice made its alleged statements to Apex. Because Mr. de Jaray and Ms. de Jaray were principals at Apex, they were the ones investigated and prosecuted. They were investigated for conduct relating to their roles at Apex. The investigation, prosecution, and subsequent publicity had far-reaching effects that went beyond Individual Plaintiffs' roles at Apex. Ms. de Jaray was treated poorly by neighbors and in public. Mr. de Jaray lost other business opportunities and had other business ventures fail. Mr. Oswald had his professional reputation damaged beyond Apex. Many of Individual Plaintiffs' claims, however, center on harms to one or more businesses (such as lost profits of the business or lost value of the business)

---

Plaintiffs' on the Lanham Act claim no longer asserted and against Lattice's affirmative defense to that claim of unclean hands.

or interactions involving Apex, such as contractual claims, that are not personal. Although Individual Plaintiffs have submitted some evidence of personal damages, because much of Individual Plaintiffs' alleged damages stem from corporate claims and harms, the Court analyzes whether Individual Plaintiffs can assert such claims.

If claims asserted by Individual Plaintiffs belong to the corporations, Individual Plaintiffs argue, they still can assert them because the corporations are no longer active. "While a corporation remains in existence . . . as specified by corporation continuance statutes, shareholders do not have standing to assert the claims of the corporation, unless they do so through derivative actions. After a specified period post-dissolution, however, the corporation ceases to exist." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1036-37 (9th Cir. 2010) (citations omitted). The Ninth Circuit continued, describing that states generally "provide by statute specific procedures for distributing assets and assigning the liabilities of [companies] after dissolution." *Id.*

Individual Plaintiffs assert claims and seek damages on behalf of several corporations, including Apex, "Footstone Jive, California St. Winery, Inc." (Footstone), and AMFD. Individual Plaintiffs originally contended that because these companies were all "dissolved," Individual Plaintiffs as the sole shareholders could pursue the claims of the corporations.[4] Individual Plaintiffs assert in their brief that they "were the sole beneficial shareholders" of the corporations and "they received any remaining corporate assets following dissolution." ECF 204 at 23.

---

[4] Another corporation for which Individual Plaintiffs claim damages, Portrait Winery Co., Ltd. (Portrait), has not dissolved. Individual Plaintiffs note that Portrait has "not done any business since early 2013" but fail to comment further about how Mr. de Jaray has standing to assert claims or damages on behalf of Portrait when it has not dissolved.

PAGE 7 – OPINION AND ORDER

After the Court provided the parties a tentative opinion and then allowed Individual Plaintiffs the opportunity to seek to amend to add corporate plaintiffs, Individual Plaintiffs reinstated Apex and AMFD.[5] Individual Plaintiffs may not assert damages on behalf of those corporations. *See Johnson v. Con-Vey/Keystone, Inc.*, 814 F. Supp. 931, 934 (D. Or. 1993) ("The law is clear that a shareholder does not have standing to seek compensation for an injury to a corporation."). The Court, therefore, addresses Individual Plaintiffs' arguments regarding dissolved corporations only with respect to Footstone

Footstone is governed by Oregon law, specifically the Oregon Revised Statutes (ORS). Individual Plaintiffs submit an online printout showing that Footstone was administratively dissolved. "A corporation administratively dissolved continues the corporation's corporate existence but may not carry on any activities except activities that are necessary or appropriate to wind up and liquidate the corporation's business and affairs under ORS 60.637, and notify claimants under ORS 60.641 and 60.644." ORS § 60.651.

Under ORS 60.637, "Dissolution of a corporation does not: (a) transfer title to the corporation's property; [or] . . . (e) Prevent commencement of a proceeding by or against the corporation in the corporation's corporate name." ORS § 60.637(2). A creditor may enforce a judgment against a dissolved corporation for undistributed assets (including insurance) and, if assets have been distributed in liquidation, "against the shareholder of the dissolved corporation to the extent of the shareholder's pro rata share of the claim or the corporate assets distributed to the shareholder in liquidation, whichever is less." ORS § 60.645. Further, courts applying Oregon law have allowed claims to move forward against or by dissolved Oregon corporations.

---

[5] The Court's tentative opinion explained why under Canadian law Individual Plaintiffs could not claim damages on behalf of Apex or AMFD, even assuming those entities had dissolved.

*Suniga*, 344 Or. 301, 308 (2008). Economic loss has been defined by the Oregon Supreme Court as "financial losses such as indebtedness incurred and return of monies paid," as distinguished from "damages for injury to person or property." *Id.* at 306 (citing *Onita Pac. Corp. v. Trs. of Bronson*, 315 Or. 149, 159 n.6 (1992). The Oregon Court of Appeals has similarly discussed a line of Oregon cases defining "economic losses" as "financial losses to intangibles," such as lost profits, lost insurance proceeds, attorney's fees, and failed loan transactions. *Harris v. Suniga*, 209 Or. App. 410, 418 (2006) (collecting Oregon cases), *aff'd,* 344 Or. 301 (2008). "Unlike economic losses to third parties, which can be indeterminate and potentially unlimited, physical damage to property ordinarily can be ascertained, assessed, and paid." *Harris*, 344 Or. at 312 (economic loss doctrine did not bar claim for dry rot damage caused by negligent construction).

Individual Plaintiffs respond that the economic loss doctrine does not apply because Mr. de Jaray alleges that he suffered damage to property when some of his electronic devices and other property was taken and not returned and Ms. de Jaray claims physical injury when she was served with the indictment, at which time she was taken to the hospital. Ms. de Jaray also claims psychological harm and emotional distress. Thus, argue Individual Plaintiffs, their negligence claims are not solely based on economic loss. In the alternative, Individual Plaintiffs argue that they have shown a legally protected interest owed them by Lattice and that they are in a special relationship with Lattice.

### 1. Special Relationship or Legally Protected Interest

Individual Plaintiffs argue that because of the unique relationship between Apex and Lattice, Lattice had a special relationship with Apex and therefore with Individual Plaintiffs. For this argument, Individual Plaintiffs rely on their contention that Individual Plaintiffs stand in the shoes of Apex. This argument was based on Individual Plaintiffs' contention that they were

successors to the dissolved corporation, was rejected by the Court in its tentative opinion, and is no longer applicable now that Apex has been reinstated and is a separate plaintiff. *See Dole Food Co. v. Patrickson,* 538 U.S. 468, 474 (2003) ("[T]he corporation and its shareholders are distinct entities.").

For the argument that Lattice owed a duty imposed outside of negligence, Individual Plaintiffs contend that the United States' Export Administration Regulations (EAR) created a legally protected interest of Individual Plaintiffs' that Lattice infringed. Individual Plaintiffs cite 15 C.F.R. § 764.2, in relevant part, as follows:

> (b) . . . . No person may cause . . . [or] induce . . . the doing of any act prohibited, or the omission of any act required, by ECRA [Export Control Reform Act], the EAR, or any order, license or authorization issued thereunder;
>
> * * *
>
> (g) Misrepresentation and concealment of facts.
>
> (1) No person may make any false or misleading representation, statement, or certification, or falsify or conceal any material fact, either directly to BIS or an official of any other United States agency, or indirectly through any other person:
>
> (i) In the course of an investigation or other action subject to the EAR; or
>
> * * *
>
> (iii) For the purpose of or in connection with effecting an export, reexport, transfer (in-country) or other activity subject to the EAR.

15 C.F.R. § 764.2. Individual Plaintiffs assert, without citing any authority, that these regulations are in place, at least in part, to protect consumers when making classification decisions in reliance on a manufacturer's representations.

Lattice responds that Individual Plaintiffs repeatedly have asserted that the EAR do not apply to them and cannot now, to avoid summary judgment, seek to assert the EAR's

PAGE 11 – OPINION AND ORDER

protections. Lattice also argues that Individual Plaintiffs' contentions lack merit because Individual Plaintiffs must show that their purported protected interest is "reflected in a statute designed to protect the plaintiff from the type of emotional harm that occurred." *I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 255 (2022) (quoting *Philibert v. Kluser*, 360 Or. 690, 705-06 (2016)). Lattice contends Individual Plaintiffs cannot do so because the regulation itself identifies its purpose, which is not to protect re-exporters like Apex, let alone the emotional damages of its shareholders and former employees like Individual Plaintiffs. Instead, "[t]he export control provisions of the EAR are intended to serve the national security, foreign policy, nonproliferation of weapons of mass destruction, and other interests of the United States . . . ." 15 C.F.R. § 730.6. Indeed, the regulations place the burden on companies like Apex (a "reexporter or transferor") to "correctly classify[] the items in a transaction" and the [f]ailure to classify or have classified the item correctly does not relieve the person of the obligation to obtain a license when one is required under the EAR." *Id.* § 732.3(b)(1). What the EAR require sellers like Lattice to include is a prescribed Destination Control Statement as "an integral part" of the seller's "commercial invoices" along with the ECCNs for certain products. *Id.* § 758.6. The record shows that Lattice included the required statement on its commercial invoices.

The Court agrees with Lattice that Individual Plaintiffs fail to raise a genuine issue of material fact that Lattice owed Individual Plaintiffs a duty created by the EAR to protect Individual Plaintiffs from the harms alleged by Individual Plaintiffs. Thus, the EAR fail to provide an independent source sufficient for negligence-based claims.

### 2. Harm to Person or Property

Individual Plaintiffs do not specifically argue or provide evidence that Mr. Oswald claims injury to person or property. And although Individual Plaintiffs generally reference "Plaintiffs"

combined in discussing their claims and arguments,[6] when they discuss their alleged emotional and psychological harm, they focus on the fact that they faced "decades in jail" and other issues that Mr. Oswald did not face.

For Mr. de Jaray, Individual Plaintiffs assert that some of his personal property was damaged or seized when his house was "raided" by government authorities and some of the seized property has never been returned. Individual Plaintiffs contend that this "raid" resulted from Lattice's negligent conduct, and thus that Mr. de Jaray's personal property was damaged or lost because of Lattice's negligent conduct. Lattice responds that this argument was raised for the first time in Individual Plaintiffs' response to summary judgment. The First Amended Complaint, however, alleges that Individual Plaintiffs have "special injuries," including damage to "personal property." First Am. Compl. ¶ 7 (ECF 51 at 3).

Lattice also argues that no matter if Mr. de Jaray suffered injury to property, claims based on negligent misrepresentation, like both of Individual Plaintiffs' negligence-based claims, require a special relationship under Oregon law. The Court disagrees that Oregon law is so constrained.

Lattice cites *Onita Pac. Corp. v. Trustees of Bronson*, 315 Or. 149 (1992), and *Conway v. Pacific University*, 324 Or. 231 (1996). Lattice primarily relies on the statement in *Conway* that "in Oregon, the tort of negligent misrepresentation requires that one party in a relationship owe a duty 'beyond the common law duty to exercise reasonable care to prevent foreseeable harm.'" *Conway*, 324 Or. at 236 (quoting *Onita*, 315 Or. at 159). Both *Conway* and *Onita*, however,

---

[6] Each Individual Plaintiff brings his or her own claim and each Individual Plaintiff's claim must meet the elements and survive on its own merits. For the most part, Individual Plaintiffs' brief "lumps all plaintiffs together and makes [few] specific arguments as to any individual plaintiff. . . . This approach, however, ignores the considerable factual differences between the plaintiffs." *Amory v. Giarla*, 2021 WL 254192, at *7 (N.D. Cal. Jan. 26, 2021).

involved purely economic losses. *Conway* relied on *Onita*, and *Onita* focused on the policy reasons behind limiting the recovery of purely economic losses for negligence claims without personal injury or property damage, particularly the potential exposure to limitless liability. *See, e.g.*, *Onita*, 315 Or. at 157-58 (describing the "best known statement for not recognizing liability for economic loss arising from a negligent misrepresentation causing only economic loss" in *Ultramares v. Touche*, 255 NY 170 (1931), as avoiding potential "limitless liability . . . in an indeterminate amount for an indeterminate time to an indeterminate class"); *id.* at 159 ("Hence, where the recovery of economic losses is sought on a theory of negligence, the concept of duty as a limiting principle takes on a greater importance than it does with regard to the recovery of damages for personal injury or property damage." (quoting *Hale v. Groce*, 304 Or. 281, 284 (1987)).

The Oregon Supreme Court in *Onita* rejected a proposed rule for negligent misrepresentation that made "no distinction . . . between tangible personal injury and property damage on the one hand and intangible economic losses on the other." *Id.* at 164; *see also id.* at 911 n.8 (Unis, J., dissenting) (disagreeing with the distinction made by the majority between purely economic injury and injury to person or property as the distinguishing line for negligent misrepresentation versus direct injury and remote injury as the distinguishing line, and describing that if a contractor makes a negligent misrepresentation that a house is sound and it collapses and injures the owner and an accountant makes a negligent misrepresentation that a corporation is sound and it collapses and bankrupts its owner, both owners should be able to recover their direct injury whereas under the majority's holding, only the homeowner could recover because the injury was personal versus purely economic).

PAGE 14 – OPINION AND ORDER

The Oregon Supreme Court has not concluded that negligent misrepresentation is never actionable absent a special relationship, even when there is injury to person or property. Indeed, the majority in *Onita* counsels against it and the dissent gives an example that the majority's holding would allow a negligent misrepresentation claim asserting personal injury when there is no special relationship. "In the absence of authority addressing the type of personal [or property] injury claims alleged under Oregon law by [Individual Plaintiffs], the negligent misrepresentation claim is not foreclosed." *See In re JUUL Labs, Inc., Mktg. Sales Prac. & Prod. Liab. Litig.*, 2021 WL 3112460, at *14 (N.D. Cal. July 22, 2021).

Thus, Mr. de Jaray may proceed with his negligence-based claims and seek damages based on his claimed lost or damaged personal property. This does not, however, mean that Mr. de Jaray also may pursue his economic damages, as distinct from his property damages. Recovery of economic damages are foreclosed by Oregon's application of the economic loss doctrine and the absence of a special relationship.

For Ms. de Jaray, Individual Plaintiffs assert that she suffered physical harm when she was surrounded by law enforcement agents when she was five months pregnant. Lattice again argues that this was raised for the first time in response to summary judgment. That she was surrounded by agents while five months pregnant was alleged in the First Amended Complaint, ¶ 69. ECF 51 at 16. Individual Plaintiffs, however, did not allege that Ms. de Jaray was physically harmed, went to the hospital, or that Individual Plaintiffs were seeking damages for physical harm. Indeed, in their allegation describing their "special injuries," Individual Plaintiffs allege that they have injuries distinct from other shareholders and describe them as follows: "Plaintiffs' reputations, personal property, other business opportunities, and investments were harmed as a result of Lattice's misconduct." First Am. Compl. ¶ 7 (ECF 51 at 3). When granting

Individual Plaintiffs' motion to amend, the Court expressed "skepticism" over whether Individual Plaintiffs could show a special relationship or other basis to avoid the economic loss doctrine for their negligence-based claims. Individual Plaintiffs, however, never sought further leave to amend to add allegations relating to claims of physical injury or clarify that Ms. de Jaray was making such a claim in paragraph 7 of the First Amended Complaint. The Court agrees that Individual Plaintiffs' attempts to add a claim for personal injury to Ms. de Jaray in response to summary judgment is untimely and prejudicial.

Individual Plaintiffs also argue that "Plaintiffs" have suffered emotional distress and psychological damages. They do not, however, specify which Plaintiff. Instead, they argue that the threat of "decades in jail" supports such a contention. This would only support a claim by Mr. de Jaray and Ms. de Jaray. The evidence cited by Individual Plaintiffs supporting the claim for psychological and emotional distress is a psychological report on behalf of Ms. de Jaray.

The problem with Individual Plaintiffs' assertion that they are entitled to emotional distress damages and that psychological injury is somehow "injury to the person" that is an exception to the economic loss rule is that under Oregon law, emotional distress damages for negligent conduct are only available under limited circumstances, which are similar to the circumstances allowing recovery of purely economic loss. *See Philibert v. Kluser*, 360 Or. 690 (2016). These circumstances include: (1) when there is a special relationship; (2) when there is physical injury; (3) when the tortfeasor acted intentionally; and (4) "when a defendant negligently causes foreseeable, serious emotional distress and also infringes some other legally protected interest." *Id.* at 702-03. The fourth category includes legally protected interests arising from various sources, not present here, such as court orders, statutes, regulations, and common law. *Id.* at 703.

The Court has rejected Individual Plaintiffs' arguments that (1) there was a special relationship between them and Lattice, (2) there was some other legally protected interest infringed by Lattice, and (3) there was actionable physical injury. Thus, there is no basis on which Individual Plaintiffs can recover emotional distress damages for Lattice's alleged negligence-based conduct. The only negligence-based claim that survives is Mr. de Jaray's claim that based on Lattice's negligence and negligent misrepresentations, Mr. de Jaray suffered damages from his lost or damaged personal property.

## C. Fraud

Lattice moves for summary judgment on Individual Plaintiffs' fraud claim "for failure to adduce clear and convincing evidence of intent to deceive."[7] ECF 182 at 7. Intent to deceive must be proven by "clear and convincing evidence." *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or. 390, 407 (1987). Intent to deceive may "be proven if the representation is made without any belief as to its truth, or with reckless disregard whether it be true or false, and in cases where representations are made by one who is conscious that he has no sufficient basis of information to justify them." *Id.* at 406.

It is undisputed that Lattice published datasheets on the 2ICs that indicated that the devices were case temperature rated. The relevant Department of Defense standard microcircuit drawings (SMD) referenced on the datasheets also only specified performance over a case temperature range of -55ºC to +125ºC. Devices that are case temperature rated in the ranges listed do not require export control. Devices that are *ambient* temperature rated in those ranges do require export control. Lattice's former Vice President of Corporate and Customer Quality,

---

[7] Lattice does not move for summary judgment on any other elements of fraud. The Court, therefore, does not reach the other elements of fraud.

Michael Gariepy, testified that Lattice's "customers would expect the product we shipped to meet the specifications listed in the data sheets." Gariepy Depo Tr. 41:9-15, ECF 196-2 at 5.

One ECCN for ambient temperature rated integrated circuits, and requiring export control, is 3A001.a.2.c. Individual Plaintiffs contend that before 2004, Lattice categorized its integrated circuits using ECCNs that did not indicate ambient temperature ranges, and therefore did not trigger export control. *See, e.g.*, ECF 196-3 at 3-8 (Lattice commercial invoices of integrated circuits listing different ECCNs, although always including boiler plate customs terminology stating the items are subject to export regulation). At some point around 2004, Individual Plaintiffs assert that Lattice erroneously self-reported to the United States government that Lattice improperly exported integrated circuits that actually were export controlled, and then changed and internally treated all such devices as export controlled. Lattice, however, never made any change to its datasheets or specifically alerted customers to Lattice's purported new belief that all its integrated circuits were now export controlled, including the 2ICs.

Individual Plaintiffs argue that Lattice mistakenly characterized its entire line of 883 programmable logic devices, which included the 2ICs, under ECCN 3A001.a.2.c., which covers field programmable logic devices rated for operation over *ambient* temperature from -55ºC to +125ºC, not *case* temperature ranges like the 2ICs. This made Lattice's entire line export controlled, including the 2ICs. Individual Plaintiffs note that Lattice memorialized this change in an internal 2004 ECCN flow chart, ECF 159-31, and notified its sales representative of the change, ECF 159-35 at 4-5. Neither Lattice nor its sales representative specifically told Apex that the 2ICs were believed to be export controlled or ambient temperature rated.

Lattice argues that because it included the ECCN for ambient temperature, export controlled devices on its commercial invoices provided to Apex, Individual Plaintiffs cannot

PAGE 18 – OPINION AND ORDER

create a genuine dispute for trial that Lattice misrepresented or failed to disclose that the 2ICs were export controlled. Lattice contends that its "repeated" disclosures in the commercial invoices foreclose a finding of intent to deceive. Lattice also argues that Individual Plaintiffs provided no evidence that Apex or any other customer notified Lattice that the customer was confused by the datasheets or the conflict between the datasheets and the commercial invoices to put Lattice on notice for Lattice to "recklessly disregard" or otherwise demonstrate intent to deceive.

The Court disagrees with Lattice's assertion that Individual Plaintiffs have failed to adduce sufficient evidence of fraudulent intent at this stage of the litigation. Viewing the facts in the light most favorable to Individual Plaintiffs, there is sufficient evidence for this claim to survive summary judgment. Individual Plaintiffs provide evidence that Lattice itself was confused about how to categorize its integrated circuits and whether they were export controlled, and until 2004 did not treat them as export controlled. After Lattice changed its position on how to treat the 2ICs and believed they were "ambient" temperature rated, it did not provide any notification or change its datasheets. This is sufficient for a jury to conclude that Lattice made the statement in the datasheets after 2004 that the devices were "case" temperature rated with (1) a belief that the statement was not true, (2) reckless disregard as to the truth of the statement, or (3) insufficient information to justify the statement. The Oregon Supreme Court has held that such a conclusion is sufficient to allow a jury to find "intent to deceive." *Riley Hill*, 303 Or. at 406.

The mere fact that Lattice stated "ECCN 3A001.a.2.c." in its commercial invoices is not enough to support summary judgment on Lattice's intent to deceive. Whether that is a reasonable

disclosure of the export-controlled status of the 2ICs to counter the specific representation in the datasheets raises a genuine issue of fact for the jury.

## CONCLUSION

The Court DENIES AS MOOT Plaintiff's Cross-motion for Summary Judgment, ECF 156. The Court DENIES AS MOOT Lattice's Second Motion for Summary Judgment, ECF 175. The Court GRANTS IN PART AND DENIES IN PART Lattice's Third Motion for Summary Judgment, ECF 182. The Court grants summary judgment against Individual Plaintiffs' negligence-based claims of Ms. de Jaray and Mr. Oswald, and claims for damages by Individual Plaintiffs that are based on damages suffered only by the corporate entities, and denies the motion in all other respects.

**IT IS SO ORDERED**.

DATED this 5th day of July, 2023.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge