**(Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

**Derek F. Foran** (*pro hac vice*)
Email: dforan@steptoe.com
STEPTOE LLP
One Market Plaza
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: 415-365-6700

(Additional Counsel Shown on Signature Page)

   *Of Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STEVEN A. W. DE JARAY, PERIENNE DE JARAY, DARRELL R. OSWALD,** and **APEX-MICRO MANUFACTURING CORPORATION**<br><br>                  Plaintiffs,<br><br>   vs.<br><br>**LATTICE SEMICONDUCTOR CORPORATION**, and **JOHN** and **JANE DOES 1-20**,<br><br>                  Defendants. | Case No. 3:19-cv-00086-SI<br><br><br>**LATTICE SEMICONDUCTOR CORPORATION'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO ADMITTING INTERVIEW NOTES AS "ADOPTED STATEMENTS"** |

Page 1 -   LATTICE'S OPPOSITION TO PLAINTIFFS' OBJECTIONS TO INTERVIEW NOTES AS "ADOPTED STATEMENTS"

Lattice submits the following response to Plaintiffs' objections (ECF 478), and also incorporates by reference Lattice's January 29, 2024 emails to the Court.

## I.     LEGAL STANDARD

### A.     Adopted Statements

"If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem."  Fed. R. Evid. 801, Advisory Committee's Note.  Every Circuit to have addressed the issue has held that this statements means exactly what it says, and has adopted it as the law.  *See Amarin Plastics, Inc. v. Maryland Cup Corp.*, 946 F.2d 147, 153 (1st Cir. 1991); *United States v. Klein*, 488 F.2d 481, 483 (2d Cir. 1973); *Tripp v. United States*, 295 F.2d 418, 425 (10th Cir. 1961); *United States v. Orizu*, 438 F. App'x 757, 761 (11th Cir. 2011).  Additionally, "[a] witness's reference to the prior statement need not be so specific as to require… every sentence of a prior statement to be reiterated by the witness during testimony.  A more general incorporation is permitted." *BCCI Holdings (Lux.), S.A. v. Khalil*, 184 F.R.D. 3, 6-7 (D.D.C. Jan. 7, 1999) (citation omitted, collecting authority).

The Court has also raised a question with counsel about the interplay between adopted statements and Fed. R. Evid. 801(d)(1)(B):  If a witness may adopt a prior statement as his or her present testimony, then why would there be any need to place limitations on the introduction of "consistent statements" under Rule 801(d)(1)(B)?  The answer is that Rule 801(d)(1)(B) addresses the use of prior consistent statements for the purpose of rehabilitating a witness's credibility.  If offered for that purpose, the proponent must satisfy the requirements of Rule 801(d)(1)(B), which guard against improper bolstering.  As Mueller & Kirkpatrick puts it: "[p]rior *consistent* statements . . . are not admissible at all, if the only thing that can be said for them is that they tend to support or bolster credibility, if the other side has not attacked credibility in some way." Mueller & Kirkpatrick, 4 *Federal Evidence* § 8:38; *see also id.* ("Rule 801(d)(1)(B) removes a hearsay objection to statements that are primarily admissible for a rehabilitative purpose . . . .").

If, on the other hand, the witness simply testifies that a prior statement is true and correct, that statement becomes the witness's present testimony and "there is no hearsay problem." FRE 801, advisory committee note. In that circumstance, the witness is not testifying about "a prior statement" that "is consistent with" the witness's testimony because the prior statement and present testimony are one and the same. *See* FRE 801(d)(1)(B). As one district court has explained, Rule 801(d)(1)(B) does not apply to adopted statements because "when a witness incorporates a prior statement into present testimony, there is no hearsay problem because ***there no longer is an out-of-court statement at issue.*** The restrictions of Rule 801(d)(1)(B) apply only to out-of-court statements." *BCCI Holdings*, 184 F.R.D. at 7 n. 3 (emphasis added).

In this case, the witness interviews are not being offered to bolster the credibility of any later, consistent testimony. To the contrary, they are being offered to show what was said to Canadian authorities *at the time the interviews were given*, which is probative of those authorities' reasons for investigating and prosecuting the de Jarays. To the extent that the witnesses have adopted the statements as their own present testimony, they are also being offered for their truth. This adopted, present testimony does not implicate the considerations of Rule 801(d)(1)(B) for statements offered to rehabilitate a witness's credibility.

> B. **Rule 803(5)**

Rule 803(5) provides an exception to the rule against hearsay for a record that:

> A. is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> B. was made or adopted by the witness when the matter was fresh in the witness's memory; and
>
> C. accurately reflects the witness's knowledge.

The Rule further provides, "If admitted, the record may be read into evidence buy may be received as an exhibit only if offered by an adverse party." FRE 803(5). When someone other than the declarant makes the recording, the declarant must "adopt[]" that recording as his or her "own recorded recollection" or "vouch for its accuracy." *United States v. Collicott*, 92 F.3d 973, 984 (9th Cir. 1996); *see also United States v. Lewis*, 954 F.2d 1386, 1392 (7th Cir. 1992)

(affirming admission of FBI interview report because declarant testified that he was truthful in FBI interview and FBI agent testified that interview report was accurate). Finally, the rule vests the trial court with "[b]road discretion" to assess admissibility. *United States v. Patterson*, 678 F.2d 774, 779 (9th Cir. 1982), citing Fed. R. Evid. 803(5), Advisory Committee Note ("No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate.").

## II.    ARGUMENT

Lattice submits that the overwhelming majority of statements in each interview report, apart from Patrick Lamoureux's, has been clearly adopted by the interviewed witness as that witness's present testimony.[1] Thus, the reports may be admitted into evidence.

### A.    April Zhang

Plaintiffs objection to admission of both a videotaped interview of Ms. Zhang (DX-515), as well as a certified transcript of that interview (DX-517). To be clear, Lattice intends to move only the videotape itself into evidence, and Plaintiffs' objections as to the certified transcript are moot.

As to the video interview itself, Ms. Zhang plainly testified at her deposition—after watching the video—that it was in fact her on the video giving statements to investigators (ECF 379 at 26:11-18), and also repeatedly testified that everything she said was truthful and accurate (*id.* at 26:19-28:2, 55:1-4, 58:15-21). This is plainly sufficient for Ms. Zhang to have adopted the statements in the video as her present testimony.[2] Plaintiffs' objections concerning two

---

[1] Where a witness adopted only certain statements in their interview report and not others, Lattice has proposed a redacted version of the interview report for evidence. (*See* 2/1/2024 email from N. Aldrich.)

[2] If for any reason the Court were to disagree, it is worth noting that there is no contention in this case that the video was somehow fabricated. If a witness testifies under oath that a video in fact depicts them giving truthful statements, that would seem to be a textbook example of admissibility under the residual hearsay exception of Rule 807.

comments Ms. Zhang made in connection with the video are simple mischaracterizations of her testimony, and are unfounded.

First, Plaintiffs contend that Ms. Zhang testified a portion of the video was "not accurate" when she testified that she "checked with the COO" and the COO "said yes." (ECF 478 at 3.) But with this statement, Ms. Zhang was *confirming* her statements to investigators, not correcting them. Ms. Zhang had told investigators during the video that she "cut POs" for Mr. de Jaray "not from the regular MRP system" because when she "check[ed] with Cindy," Cindy (Watson) told her that "Steve ask[s] you to do it, you just cut the PO." (*See* DX-517 at 4.) Cindy Watson was Apex's Chief Operating Officer, or "COO." The testimony Plaintiffs point to from Ms. Zhang's deposition was entirely consistent with the statements in her video-recorded interview, and did not reflect any correction or inaccuracy.

Second, Plaitniffs contend that Ms. Zhang could not confirm the accuracy of the video footage played at 44:20. That objection is unfounded. After watching the portion of the interview in which Ms. Zhang stated that Mr. de Jaray "did not want me to talk to Simon too much, because usually, if he have something with Simon, he—he didn't want me to know too much." (DX-517 at 13.) As reflected in the deposition transcript, counsel for Lattice asked asked Ms. Zhang: "Is everything there true and accurate?" (ECF 379 at 44:23-24.) Mr. Zhang unequivocally responded "Yes." (*Id.* at 44:25.) The testimony Plaintiffs point to (*id.* at 45:1-11) was in response to a **different,** follow-up question from Lattice's counsel: "Did Mr. de Jaray tell you that he didn't want you to talk to Simon too much, or did you just form that belief yourself?" (*Id.* at 45:1-3.) The fact that Ms. Zhang was unable to recall additional details that were **not** in her interview report in no way undermines her clear testimony that the statements at issue were true and accurate.

Plaintiffs next contend that Ms. Zhang testified that she did not remember the ages of certain individuals reflected in her interview report. Lattice submits those portions of Ms. Zhang's interview report under Rule 803(5). Ms. Zhang once knew about those facts, but now has testified that she cannot recall those details; the record was made shortly after her

Page 5 -    LATTICE'S RESPONSE TO PLAINTIFFS' OBJECTIONS
            TO INTERVIEW NOTES

employment with Apex ended; and Ms. Zhang testified that the interview report is generally accurate. (*Id.* at 61:1-3, 62:25-63:8, 63:25-64:5.)

Plaintiffs also contend that there is hearsay in a paragraph of Ms. Zhang's interview report that begins "ZHANG was asked about any new developments… ." (*See* ECF 478 at 4-5.) But Lattice does not offer that paragraph for the truth of the matter asserted about what happened at Apex during that time. Rather, Lattice offers that statement as probative of the reasons why the de Jarays were investigated and prosecuted. *See United States v. Davis*, 577 F.3d 660, 666 (6th Cir. 2009) ("In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay.").

Next, Plaintiffs point to three sentences in the interview report that fail to begin with "ZHANG was asked," "ZHANG believes," or the like. There is no basis for Plaintiffs' assertion that these three statements are "statements of the investigator" interposed in the middle of Ms. Zhang's interview report. (*See* ECF 478, at 5.) The report is obviously intended as a report of Ms. Zhang's statements to investigators, notwithstanding that the author did not being every single sentence with "Ms. Zhang said."

Defendant's exhibits 515 and 526 should be admitted into evidence.

**B.    Robert Hale**

The first four portions of Mr. Hale's deposition highlighted by Plaintiffs all concern whether Mr. Hale remembered high-level details about his interview itself, ***not*** the accuracy of the statements reflected in his interview report. (*See* ECF 478, at 5-7.) After reading the interview report, Mr. Hale specifically testified that everything in it was true and correct to the best of his knowledge. (*See* ECF 372 at 34:19-38:5.) Lattice's specific responses to Plaintiffs' objections concerning those portions of the transcript is as follows:

- **Tr. 22:14-22**: Here, Mr. Hale simply states that he does not "recall the actual meeting" and so could not adopt the entirety of his statement as a whole. The fact that Mr. Hale could not remember details about his interview with investigators does not detract from his later affirmance of what he told investigators, as memorialized in the interview report.

- **Tr. 29:21-30:8**: Again, Mr. Hale simply testifies that he does not "remember the actual day" of the interview and so cannot adopt the entirety of his report as a whole. Mr. Hale later adopted his report statement-by-statement.

- **Tr. 34:12-21, 35:9-36:8**: Here, Mr. Hale again testifies that he could not remember certain "specifics" surrounding his meeting with investigators. As noted above, Lattice's counsel asked Mr. Hale to focus on the question of whether statements reflected in the interview report were true and accurate. (*See* ECF 372 at 34:19-38:5.) After Mr. Hale read the interview report in its entirety, he specifically testified that nothing in it was "inaccurate or incorrect in any way." (*Id.*)

- **Tr. 35:9-36:8**: In the question and answer following this quoted portion, Mr. Hale testified that "to the best of [his] knowledge," nothing in the report was inaccurate or incorrect.

As for the portion of Mr. Hale's testimony discussing Caliber Manufacturing Solutions, Mr. Hale expressly adopted that portion of his interview report. After initially misreading the interview report, and then responding to follow-up questions from Mr. Foran, Mr. Hale testified that the interview report is "true" because he "hadn't heard of Caliber Manufacturing Solutions." (*Id.* at 40:13-14.) Mr. Hale adopted that statement. There is no reason Mr. Hale's interview report should not be admitted into evidence.

### C. Heather States

Plaintiffs make no objection to Heather States' interview report (DX-545). Ms. States' interview report should be admitted into evidence.

### D. Spencer Mar

Contrary to Plaintiffs' suggestion, Lattice does not contend that Mr. Mar adopted his interview notes based only on his testimony that he endeavored to be truthful with investigators. (*See* ECF 478 at 8.) Instead, Lattice's counsel went on to walk Mr. Mar through each and every material statement in his interview report (DX-550), and expressly asked him to confirm each statement. (*See* ECF 381 at 61:5-77:13.) Lattice has submitted a proposed, redacted version of DX-550 based on Mr. Mar's answers to that line of questioning. (*See* 2/1/2024 email from N. Aldrich.)

Nonetheless, Plaintiffs seek to exclude DX-550 entirely because according to Plaintiffs, "[b]ased upon his deposition testimony, it cannot be said that Mr. Mar unequivocally adopted the

Page 7 -    LATTICE'S RESPONSE TO PLAINTIFFS' OBJECTIONS
            TO INTERVIEW NOTES

interview notes." (ECF 478 at 8.)³ Plaintiffs then provide a bulleted list of deposition excerpts that they contend support this conclusion. (*Id.* at 8-9.) However, Plaintiffs provide no authority in support of their apparent contention that simply because a witness cannot recall the specifics of one statement, other statements that the witness expressly affirmed should be excluded. To the contrary, Mr. Mar's critical review and selective adoption of the interview notes only lends *more* credence to those statements he *did* affirm.

More granularly, Lattice's response to each point in Plaintiffs' bullet list is set forth in the table below. To the extent that Plaintiffs have identified additional statements that Mr. Mar was unable to recall, Lattice respectfully submits that the statements are nonetheless admissible as a recorded recollection under Fed. R. Evid. 803(5). If the Court disagrees, then Lattice is willing to redact those additional portions of DX-550.

| Plaintiffs' Objection | Lattice Response |
| --- | --- |
| When asked whether there was "anything in those notes that is not correct," Mr. Mar answered, "There are parts in that that I don't recall." ECF 381, at 28:15-25. | Lattice does not object to redacting certain statements in DX-550 to account for instances in which Mr. Mar could not recall his prior statements to investigators. |
| Mr. Mar did not recall "tell[ing] investigators that Apex-Micro did not have any overseas facilities, but that Steven De Jaray represented to customers that they did." ECF 381, at 65:23-25. | In its proposed redacted version of DX-550 submitted to the Court, Lattice has already proposed redacting the statement that "Mar said that Apex-Micro did not have any overseas facilities but that Steven de Jaray represented to customers that they did." |
| Mr. Mar did not recall telling investigators "that whenever a customer wanted a tour of an Apex facility Steven had a Chinese facility rebranded to Apex-Micro by putting up Apex-Micro signs and wearing Apex-Micro jackets." ECF 381, at 66:21- 67:12. | This is already redacted in Lattice's proposed redacted version of DX-550. |
| Mr. Mar did not recall telling investigators "that April Zhang and Lewis went on trips for | Lattice offers this statement under Rule 803(5). In the alternative, Lattice would |

---

³ Plaintiffs cite no authority in support of their contention that a witness's adoption of his prior statement must be "unequivocal." ECF 478, at 8.

| | |
|---|---|
| Apex-Micro because they spoke the language." ECF 381, at 68:8-16. | redact the following sentence in DX-550: "He that April Zhang and Lewis went on trips for Apex-Micro because they spoke the language." |
| Mr. Mar did not recall telling investigators "that the modules for the RideMaxx fuel injector modules were designed in Delta, but finished in Ferndale." ECF 381, at 73:25-74:4. | Mr. Mar affirmatively testified that "that's where the RideMaxx products were built and designed, in Delta and Ferndale or some combination of both of those facilities." (ECF 381, at 74:10-15.)  Lattice submits that the more granular specifics reflected in his interview report are admissible under Fed. R. Evid. 803(5). |
| Mr. Mar did not recall telling "investigators that you were aware of the module components and said they were simple and valued at no more than about $100 for the most expensive model." ECF 381 at 74:17-22. He testified that anything he told investigators on this subject related to a "prototype BOM" that he had seen "which was not a released production BOM." Id. at 74:24-75:1. The interview notes do not reflect this testimony accurately. | Mr. Mar did qualify his statements to investigators to specify that he was referring to module components appearing on a "prototype BOM" (bill of materials). However, he expressly and repeatedly affirmed that the statement in his interview notes was correct to the best of his knowledge. (ECF 381, at 75:16-76:9, 81:21:82:1.)  He also expressly confirmed—without qualification—that no Lattice parts were involved in the build.  (*Id.*) <br><br> The statements in DX-550 on this point are entirely consistent with Mr. Mar's testimony. To the extent Plaintiffs would like to clarify that he was talking about module components for a prototype, Plaintiffs have designated that portion of Mr. Mar's testimony.  (*Id.* at 19:23-20:1.) |
| Although he testified that he "must have" told investigators that he "heard of someone called Simon," Mr. Mar immediately stated, "I don't recall." ECF 381, at 76:20-77:5. | Mr. Mar unequivocally testified that he has heard of Simon Wang (*id.* at 76:20-25), and his subsequent response that he "must have" told investigators that can only be interpreted to mean that he had heard of Simon Wang at the time he was questioned by investigators. By contrast, the line of testimony Plaintiffs refer to ("I don't recall" at 77:5) appears to be a cut off by statement concerning further details.  (*See id.* at 77:1-10 ("*That part* I [] don't recall.") (emphasis added).) |
| Mr. Mar did not recall telling investigators | In its previous submission to the Court, |

| | |
|---|---|
| that he knew that Simon Wang "work[ed] with Apex in China and that NANCAN, Mingwell, and a lighting company were all associated to a Simon in China." ECF 381, at 77:6-13. | Lattice has already proposed redacting the sentences: "He knew him to work with Apex in China and that Nancan, Mingwell, and a lighting company were all associated to Simon in China. He thought that JMSSL sounded like the name." |

Plaintiffs also object to certain statements as "statements of the investigator that are not identified as statements by Mr. Mar." (ECF 478 at 9-10.) As with Ms. Zhang's report, given the way Mr. Mar's interview report is written, it is clear that these are mere continuations of Mr. Mar's statements, not statements of the investigator interposed in the middle of the report. In any event, as detailed below, Mr. Mar testified that nearly all of these statements in fact reflected what he told the investigator.

| **Plaintiffs' Objection** | **Lattice Response** |
|---|---|
| "Spencer Mar was the Director of Customer Relations in his final year at Apex Micro Manufacturing Corporation ('Apex-Micro'). He started in about 2003 in the quotation department and then became an account manager prior to taking over for Sue Letwin." | Mr. Mar expressly testified to the truth of everything in this paragraph except that he held the post of Director of Customer Relations "in his final year," and that he "t[ook] over for Sue Letwin." (*See* ECF 381, at 11:6-13:1, 80:11-80:22.) Lattice submits that those details are admissible under Fed. R. Evid. 803(5), but alternatively is willing to redact those words from DX-550. |
| "There were rumors after the warrant that the parts were used for military purposes." | Mr. Mar expressly testified at deposition that this was something he told the investigators, and that it was true. (*See id.* at 55:24-56:15; 58:15-19.) In response to Plaintiffs' "hearsay" objection (ECF 478, at 10 n.1), Mr. Mar's testimony that "I heard rumors" is not hearsay because it is offered to show reasons that Canadian authorities prosecuted the de Jarays. |
| "It was run by Perienne de Jaray. As the end of Apex-Micro drew near, Caliber was also used to buy parts for Apex-Micro as Apex-Micro was on credit-hold with many suppliers but they eventually figured out what was going on." Mr. Mar also testified at his deposition that he did not know whether Ms. | With the exception of "but they eventually figured out what was going on," Mr. Mar expressly testified that he gave these statements to investigators and that they were true. (ECF 381, at 62:7-65:21.)<br><br>While Mr. Mar quibbled somewhat over whether Ms. de Jaray technically "ran" |

Page 10 -   LATTICE'S RESPONSE TO PLAINTIFFS' OBJECTIONS
           TO INTERVIEW NOTES

| | |
|---|---|
| De Jaray ran Caliber. ECF 381 at 62:11-16. | Caliber (*id.* at 62:11-24), that testimony will be shown to the jury and will be sufficient to clarify any alleged ambiguous word choices in DX-550. |
| "The modules were designed in Delta but finished off in Ferndale." | Mr. Mar testified that "that's where the RideMaxx products were built and designed, in Delta and Ferndale or some combination of both of those facilities." (ECF 381, at 74:10-15.). Lattice submits that the more granular specifics reflected in his interview report are admissible under Fed. R. Evid. 803(5). |
| "There were absolutely no Lattice components involved." Mr. Mar also testified that he was not "involved in the selection of components in the RideMaxx product" and would not "have known every component in every prototype of the RideMaxx product." ECF 381, at 159:18-160:4. | Mr. Mar expressly testified that he "told investigators that there were absolutely no Lattice components involved in the RideMaxx products," and that it was true to the best of his knowledge. (ECF 381, at 76:4-9.) To the extent Plaintiffs wish to argue that Mr. Mar may not have known all the facts on that point, that is an issue for cross-examination, not exclusion. Plaintiffs had the opportunity to designate that testimony from Mr. Mar's deposition and elected not to do so. |

Plaintiffs have provided no basis to exclude DX-550 in its entirety, let alone "Mr. Mar's related testimony." (*See* ECF 478, at 10.) DX-550 should be conditionally admitted into evidence.

### E. Sunita Chandra

For Ms. Sandra, Plaintiffs argue only that it was allegedly insufficient for Ms. Chandra to testify that the statements in her interview notes "should be correct as I was truthful that day." (ECF 478 at 10, citing ECF 369 at 13:16-17.) But Plaintiffs conspicuously omit that Ms. Chandra unequivocally testified that the interview notes in fact contained her truthful statements to investigators:

> Q.  … Does Exhibit Number 1 appear to you to be a report of the interview that you gave to investigators?
>
> A.  Yeah, that's the—yes, that's the interview that I did.
>
> …
>
> Q.  Okay. And subject to the inaccuracy with respect to the date that you went on

> | maternity leave is there anything else in this report regarding the statements that are attributable to you that are inaccurate or incorrect in any way?
>
> [A.]  It should be—it should be correct as I was truthful that day.
>
> *Q.  … Okay.  So these are the statements that you gave to the investigators in May, excuse me, in 2010?*
>
> A.  Yes.

(ECF 369 at 12:13-13:21 (emphasis added, objections omitted).)  In other words, Ms. Chandra had the statement in front of her at deposition; confirmed under oath (with one exception) that it reflected her statements to investigators; and confirmed under oath that those statements were accurate.  That testimony squarely satisfies the Court's guidance on this point (*see* ECF 478 at 10-11), and Plaintiffs' objection is without merit.  *See also BCCI Holdings*, 184 F.R.D. at 6-7 (sentence-by-sentence adoption not required, as "[a] more general incorporation is permitted").

### F. Patrick Lamoureux

Plaintiffs contend that Mr. Lamoureux's CBSA interview report (DX-547) is not trustworthy because during deposition, Mr. Lamoureux testified that he could not remember the events described in that report.  That is the very reason why Lattice seeks admission of the interview report under Rule 807.  Because of the significant passage of time, Mr. Lamoureux testified that he could not offer any helpful testimony about the events recorded in his interview report.  He also testified that he had no reason to believe the CBSA officers would have misrepresented what he said during his interview, other than the general proposition that people sometimes make mistakes.  (ECF 375 at 93:10-18.)  Mr. Lamoureux also expressly testified that his memory was better when he gave the interviews than it was during his deposition.  (*Id.* at 42:5-8.)  Under these circumstances, Mr. Lamoureux's CBSA interview report should be admitted into evidence under Rule 807.

Plaintiffs contend that Mr. Lamoureux's FBI interview report (DX-528) is not trustworthy because he later retracted some of the statements contained in that report when asked "for comment" by Mr. de Jaray.  (*See* PX-186.)  But Mr. Lamoureux's November 2013 email to Mr. de Jaray actually ***declined to retract*** several key facts contained in his interview report.  (*See*

*id.*)  For example, Mr. Lamoureux's November 2013 email did not alter the statement in his FBI interview report that he "was aware of some dealings DEJARAY and his daughter had with LATTICE SEMICONDUCTOR from Portland, OR, and DEJARAY's business partner from China named SIMON LNU, who also lived in Vancouver."  DX-528, at 2; *seel also* ECF 375 at 119:21-120:4 (confirming that he did not correct that statement in his email to Mr. de Jaray). Indeed, Mr. Lamoureux confirmed under oath that he did not correct or retract the bulk of the statements contained in his FBI report.  (*Id.* at pp. 119-124.)  Thus, when given an opportunity to "comment" on his prior statements, Mr. Lamoureux did not change those key facts, which provides additional indicia of their accuracy.  Under these circumstances, Mr. Lamoureux's FBI report should be admitted under Rule 807.

### G.    Randy Wood

Plaintiffs contend that Mr. Wood's testimony that all statements contained in his interview report is true and accurate is insufficient for adoption. But Plaintiffs cite to no case law for the proposition that the witness must walk through each and every prior statement and separately testify that it is true and accurate. Here, Mr. Wood read his interview report thoroughly.  After reading the report, he testified that it was true and accurate. That is sufficient for adoption. *See BCCI Holdings*, 184 F.R.D. at 6 (sentence-by-sentence adoption not required), citing *Amarin Plastics*, 946 F.2d at 153.

### H.    John Keen

Plaintiffs state no additional objections to the "Evidence of John Keen" contained in DX-512.  Instead, Plaintiffs object only to the admissibility of the handwritten notes of the CBSA investigator.  Lattice will remove the handwritten notes from DX-512 such that that exhibit will only contain the "Evidence of John Keen," to which Plaintiffs have no objection.

## III.    CONCLUSION

For the foregoing reasons, Defendants' exhibits 512 (as modified), 516, 526, 528, 545, 547, 549, 550, 551, 552, 553, and 561 should be admitted into evidence.

Dated this 5th day of February, 2024.

        Respectfully submitted,

        SCHWABE, WILLIAMSON & WYATT, P.C.

By:   *s/ Nika Aldrich*
      Nika Aldrich, OSB #160306
      Scott D. Eads, OSB #910400
      Jason A. Wrubleski, OSB #120524
      Telephone: 503-222-9981
      Facsimile: 503-796-2900

      Derek F. Foran (*pro hac vice*)
      STEPTOE LLP
      Telephone: 415-365-6700

      Geoffrey L. Warner (*pro hac vice*)
      Email: gwarner@steptoe.com
      STEPTOE LLP
      633 West Fifth Street, Suite 1900
      Los Angeles, CA 90071
      Telephone: 213-439-9421

      Andrew J. Sloniewsky (*pro hac vice*)
      Email: asloniewsky@steptoe.com
      STEPTOE LLP
      1330 Connecticut Avenue, NW
      Washington D.C. 20036
      Telephone: 202-429-6759

      James P. Bennett (*pro hac vice*)
      Email: jbennett@nortonlaw.com
      THE NORTON LAW FIRM PC
      299 Third Street, Suite 200
      Oakland, CA 94607
      Telephone: 510-906-4905

      *Attorneys for Defendant*