# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**APEX-MICRO MANUFACTURING
CORPORATION**,

        Plaintiff,

   v.

**LATTICE SEMICONDUCTOR
CORPORATION**,

       Defendant.

Case No. 3:19-cv-86-SI

**FINAL JURY INSTRUCTIONS**

DATED this 14th day of February, 2024.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

# INDEX OF FINAL JURY INSTRUCTIONS

GENERAL INSTRUCTIONS ...................................................................................4

    Instruction No. 1:  Duty of Jury.......................................................................4

    Instruction No. 2:  Burden of Proof—Preponderance of the Evidence...........4

    Instruction No. 3:  Burden of Proof—Clear and Convincing Evidence .........5

    Instruction No. 4:  What Is Evidence .............................................................5

    Instruction No. 5:  What Is Not Evidence ......................................................6

    Instruction No. 6:  Direct and Circumstantial Evidence ................................7

    Instruction No. 7:  Ruling on Objections........................................................7

    Instruction No. 8:  Credibility of Witnesses ..................................................8

    Instruction No. 9:  Charts and Summaries Received in Evidence .................9

    Instruction No. 10: Charts or Summaries Not Received in Evidence ...........10

    Instruction No. 11: Opinion Testimony.........................................................10

    Instruction No. 12: Evidence for a Limited Purpose ....................................11

    Instruction No. 13: Corporations ..................................................................11

    Instruction No. 14: All Parties Are Equal Before the Law ...........................12

    Instruction No. 15: "Intent" Defined ............................................................12

    Instruction No. 16: Causation and "But for" Defined ...................................12

    Instruction No. 17: Right to Assume Law Obeyed .......................................12

    Instruction No. 18: "Confidential" and Similar Markings ...........................12

Instruction No. 19: Summary of Apex's Claims and Lattice's Defenses .....13

Instruction No. 20: "Rated for Operation" Defined ......................................14

VERDICT FORM INSTRUCTIONS ........................................................................14

Instruction No. 21: Verdict Form Generally ..................................................14

Instruction No. 22: Verdict Question 1 (Apex's Contract Claim) ...............15

Instruction No. 23: Verdict Question 2 (Contract Limitations Defense) ......16

Instruction No. 24: Verdict Question 3 (Apex's Fraud Claim)....................19

Instruction No. 25: Verdict Question 4 (Fraud Limitations Defense)...........22

Instruction No. 26: Verdict Question 5 ("*In Pari Delicto*" Defense)............23

Instruction No. 27: Verdict Question 6 (Actual Damages)...........................24

Instruction No. 28: Verdict Question 7 (Punitive Damages, Step One) .......26

Instruction No. 29: Verdict Question 8 (Punitive Damages, Step Two).......27

CONCLUDING INSTRUCTIONS ..........................................................................28

Instruction No. 30: Duty to Deliberate .........................................................28

Instruction No. 31: Consideration of Evidence—Conduct of the Jury .........29

Instruction No. 32: Communication with Court............................................31

Instruction No. 33: Evidence in Electronic Format......................................31

Instruction No. 34: Return of Verdict............................................................33

## GENERAL INSTRUCTIONS

**Instruction No. 1:  Duty of Jury**

Members of the Jury:

Now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. These final jury instructions supersede and replace any preliminary jury instructions that I gave to you at the beginning of the trial. You may keep a copy of these instructions and have them with you in the jury room to consult.

It is your duty to weigh and evaluate all the evidence received and, in that process, to decide the facts. It is also your duty to apply the law to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. At the beginning of this trial, you took an oath promising to do so. Do not allow personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases—conscious or unconscious—to influence you.

You must follow all these instructions and not single out some and ignore others. They are all important. Please do not read any suggestion as to what verdict you should return into these instructions or into anything I may have said or done. That is a matter entirely up to you.

**Instruction No. 2:  Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving a claim or an affirmative defense by a

"preponderance of the evidence," it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true. You should base your decision on all the evidence, regardless of which party presented it.

**Instruction No. 3:  Burden of Proof—Clear and Convincing Evidence**

A party alleging fraud or fraudulent concealment must prove each element of the alleged fraud or fraudulent concealment by "clear and convincing evidence." Also, a party seeking punitive damages must prove that it is entitled to punitive damages by "clear and convincing evidence."

This means that the party alleging fraud or fraudulent concealment must present evidence that leaves you with a firm belief or conviction that it is highly probable that each of the elements needed to be proved for that claim are true. Similarly, a party seeking punitive damages must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions needed to be proved for punitive damages are true. "Clear and convincing" is a higher standard of proof than proof by a preponderance of the evidence. It does not, however, require proof beyond a reasonable doubt.

**Instruction No. 4:  What Is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of the witnesses (whether presented live or by videorecording of excerpts from an earlier sworn deposition);

2.  the exhibits received in evidence; and

3.  the stipulations, or the facts agreed upon, by the parties.

**Instruction No. 5:  What Is Not Evidence**

In reaching your verdict, you may consider only those three types of evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, what they will soon say in their closing arguments, or anything else they may have said at any other time during the trial is not evidence. If the facts as you remember them differ from how the lawyers stated them, you should rely on your memory of the facts.

2.  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

3.  Any testimony that has been excluded or stricken or that I have instructed you to disregard is not evidence and must not be considered.

4.  Anything you may have seen or heard when the Court was not in

session or when I was not sitting on the bench is not evidence. You are to decide the case solely on the evidence received at trial.

**Instruction No. 6:  Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact to be true.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. Other evidence, however, such as testimony that someone turned on a garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law does not require that more weight be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Instruction No. 7:  Ruling on Objections**

There are rules of evidence that control what can be received in evidence. When a lawyer asks a question and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overruled the

objection, the question may be answered. If I sustained the objection, the question

cannot be answered. Whenever I sustained an objection to a question, you must

ignore the question and must not guess what the answer might have been.

**Instruction No. 8:  Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to

believe and which testimony not to believe. You may believe everything a witness

says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the

    things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case, if any;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.   the reasonableness of the witness's testimony considering all the

    evidence; and

8.  any other factors that you think bear on believability.

In your determination of credibility, however, you must avoid bias,

conscious or unconscious, based on a witness's race, color, religious beliefs,

national ancestry, sexual orientation, gender identity, gender, or economic

circumstances.

Sometimes a witness may say something that is not consistent with

something else he or she said. Sometimes different witnesses will give different

versions of what happened. People often forget things or make mistakes in what

they remember. Also, two people may see the same event but remember it

differently. You may consider these differences, but do not decide that testimony is

untrue just because it differs from other testimony.

If you decide, however, that a witness has deliberately testified untruthfully

about something important, you may choose not to believe anything that witness

said. On the other hand, if you think the witness testified untruthfully about some

things but told the truth about others, you may accept the part you think is true and

ignore the rest.

Neither the proof of a fact nor the weight of any evidence depends on the

number of witnesses who testify. What is important is how believable the

witnesses were and how much weight you think their testimony deserves.

**Instruction No. 9:  Charts and Summaries Received in Evidence**

Certain charts or summaries have been received (or admitted) in evidence to

illustrate information brought out in the trial. Charts and summaries are only as

good as the testimony or other received in evidence that supports them. You

should, therefore, give them only such weight as you think the underlying evidence deserves. When a chart or summary has been received in evidence, you will have it available to you during your deliberations, just like all other exhibits that have been received in evidence.

**Instruction No. 10: Charts or Summaries Not Received in Evidence**

Certain charts and summaries not received (or admitted) in evidence have been shown to you to help explain the contents of books, records, documents, or other evidence in the case. These items are sometimes referred to as demonstrative or illustrative exhibits, and they are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves. Because demonstrative or illustrative exhibits are not received in evidence, they will not be available to you during your deliberations.

**Instruction No. 11: Opinion Testimony**

You have heard testimony from Thomas Andrukonis, John Berg, Justin Lewis, Jacob Baker, Ryan Fayhee, and Jennifer Marietta-Westberg, who testified about their opinions and the reasons for those opinions. This opinion testimony is allowed because of the specialized knowledge, skill, experience, training, or education of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

**Instruction No. 12: Evidence for a Limited Purpose**

Some evidence has been received (or admitted) only for a limited purpose. If I instructed you that an item of evidence is received only for a limited purpose, you may consider it only for that limited purpose and not for any other.

One of the limiting instructions that I gave during the trial related to communications between Lattice and various law enforcement officials or agencies in the United States and Canada. Lattice may not be held liable for any communications that Lattice may have had with any law enforcement personnel or government agency. You may consider evidence of Lattice's communications with a government agency or officer only for the limited purpose of showing what Lattice knew or believed at the time that it made those communications.

**Instruction No. 13: Corporations**

Corporations can only act through their employees, agents, directors, officers, or managers. A corporation is responsible for the acts that its employees, agents, directors, officers, and managers perform within the scope of their authority.

**Instruction No. 14: All Parties Are Equal Before the Law**

All parties are equal before the law. A corporation is entitled to the same fair and conscientious consideration by you as any party.

**Instruction No. 15: "Intent" Defined**

Intent means either:

1.    the actor desired to cause the consequences of the actor's actions; or

2.    the actor believed that the consequences were substantially certain to result from the actor's actions.

**Instruction No. 16: Causation and "But for" Defined**

A defendant's conduct is a cause of a plaintiff's harm if the harm would not have occurred "but for" that conduct. Conversely, a defendant's conduct is not a cause of a plaintiff's harm if that harm would have occurred even without that conduct.

Many factors may operate either independently or together to cause harm. You may find that a defendant's conduct caused a harm even though it was not the only cause, so long as the harm would not have occurred without the defendant's conduct.

**Instruction No. 17: Right to Assume Law Obeyed**

Every person has a right to assume that others will obey the law, unless and until that person knows or in the exercise of reasonable care should know otherwise.

**Instruction No. 18: "Confidential" and Similar Markings**

Many of the documents received in evidence in this case have markings that read: "Confidential," "Attorneys' Eyes Only," or some similar designation. These

markings were added by the attorneys in this case for pretrial purposes with permission of the Court. You should disregard these markings when considering the evidence.

**Instruction No. 19: Summary of Apex's Claims and Lattice's Defenses**

As I explained at the beginning of the trial, this is a civil lawsuit. It is not a criminal case. In a civil trial, such as this one, a plaintiff seeks money damages from a defendant. Also, in a civil case, we don't refer to a party being "guilty" or "not guilty." Those are terms used in a criminal trial. Instead, in a civil case, we ask the jury to decide whether a party is "liable" or "not liable" to the other party for the claim or claims being asserted.

We now have only one plaintiff, Apex-Micro Manufacturing Corporation ("Apex"), suing one defendant, Lattice Semiconductor Corporation ("Lattice"). Apex is asserting two claims against Lattice. The first claim alleges breach of contract involving the sale of goods, by what the law calls "breach of the contractual duty of good faith." The second claim alleges fraud.

At the beginning of this trial, I instructed you that Mr. Steven de Jaray also was a party in this case and that Apex was asserting four claims against Lattice. You must not speculate about, or draw any inferences from, the facts that Mr. de Jaray is no longer a party in this lawsuit or that Apex now asserts only two claims against Lattice.

In response to Apex's two claims against Lattice, alleging breach of contract and fraud, Lattice denies that it has breached its contractual duty of good faith and denies that it has committed fraud. In addition, Lattice asserts what the law calls "affirmative defenses." Lattice asserts two such affirmative defenses. Lattice's first affirmative defense is based on what the law calls the "statute of limitations." Lattice's second affirmative defense is based on what the law calls "*in pari delicto*," which is a Latin phrase. I will explain each of the claims and affirmative defenses in greater detail later in these instructions.

**Instruction No. 20: "Rated for Operation" Defined**

The U.S. Department of Commerce, Bureau of Industry and Security (BIS) implements the Export Administration Regulations (EAR). An item may be designated by an Export Control Classification Number (ECCN) on the Commerce Control List (CCL). For purposes of this trial, when an ECCN refers to the phrase "rated for operation," that means "designed for operation."

## VERDICT FORM INSTRUCTIONS

**Instruction No. 21: Verdict Form Generally**

A form titled "Verdict" has been prepared for you, and each of you has been given your own copy of the Verdict form, along with your copy of these Final Jury Instructions. Will you please take out your copy of the Verdict form.

As you will see, the Verdict form has eight questions. Some of the questions ask the Jury to answer either "Yes" or "No." To answer those questions, the Jury should place either a check mark or an "X" on the applicable line. Other questions ask the Jury to fill in a dollar figure, if applicable. Detailed instructions are shown in *italics* after every question. These detailed *italicized* instructions will guide the Jury by telling you which questions you must answer, and which questions you must skip, depending on your previous answers.

I have organized the next portion of these jury instructions to correspond to each of the eight questions contained on your Verdict form.

## Instruction No. 22: Verdict Question 1 (Apex's Contract Claim)

The first question on the Verdict form asks: "Has Apex proven by a preponderance of the evidence each element of its breach of contract claim against Lattice (breach of the contractual duty of good faith)?"

To prevail on this claim of breach of contract, <u>Apex</u> must prove by a <u>preponderance of the evidence</u> each of the following four elements:

1.  the existence of a contract between Apex and Lattice;

2.  the relevant terms of the contract;

3.  Apex's lack of any prior breach of its own obligations under the contract; and

4.  that Lattice breached the contract resulting in damages.

Every contract imposes a duty of good faith. In the context of a contract for the sale of goods, the duty of good faith requires the parties to act with honesty in fact and to observe reasonable commercial standards of fair dealing in performing and enforcing the contract. This duty, however, cannot be used to contradict the stated terms of the contract.

In this lawsuit, Apex claims that Lattice breached the duty of good faith by failing to inform Apex that Lattice considered the integrated circuits at issue to be export-controlled.

"Contract damages" are damages that arise naturally and necessarily from the breach of contract and would place the nonbreaching party in the same position it would have been in if the contract had not been breached.

As shown in the *italicized* instructions after Question 1, if the answer to Question 1 is "Yes," go to Question 2. If the answer to Question 1 is "No," skip Question 2 and go to Question 3.

**Instruction No. 23: Verdict Question 2 (Contract Limitations Defense)**

The second question on the Verdict form asks: "Has Apex proven by clear and convincing evidence that Lattice engaged in fraudulent concealment such that the running of the statute of limitations on Apex's claim of breach of contract has been tolled?"

Lattice asserts as an affirmative defense that Apex filed its breach of contract claim after the time limit set by the applicable statute of limitations. A statute of limitations sets a time limit within which a plaintiff must file a claim. The time limit within which a plaintiff must file a claim differs depending on the specific claim asserted.

For purposes of this trial:

A.    The statute of limitations for a claim of breach of contract for the sale of goods is four years. That means that a lawsuit alleging breach of contract for the sale of goods must be filed within four years after the cause of action "accrued" unless the running of the statute of limitations has been "tolled" (or suspended). A cause of action "accrues" when the alleged breach of contract occurs, regardless of the aggrieved party's lack of knowledge of the alleged breach.

B.    Apex filed this lawsuit on December 18, 2018, and the parties agree that if there was a breach, it occurred before December 18, 2014. Thus, for Apex's breach of contract claim to be timely (that is, not barred by the statute of limitations), the running of the statute of limitations must have been tolled (or suspended) until at least some time after December 18, 2014.

C.    For Apex's claim of breach of contract for the sale of goods, the running of the statute of limitations is tolled (or suspended) only if Lattice fraudulently concealed the alleged breach from Apex.

To prove that Lattice fraudulently concealed the alleged breach, <u>Apex</u> must prove by <u>clear and convincing evidence</u> each of the following two elements:

> 1.    Lattice fraudulently concealed the fact of the alleged breach; and
>
> 2.    notwithstanding reasonable diligence undertaken by Apex, Lattice's allegedly wrongful conduct prevented Apex from discovering the alleged breach.

Fraudulent concealment can occur through: (a) a false representation of a material matter; (b) a misleading half-truth; or (c) active concealment. A matter is material if it would likely affect the conduct of a reasonable person. A person who makes a representation that is a misleading half-truth becomes obligated to make a full and fair disclosure of the whole truth, and the failure to make a full and fair disclosure of the whole truth may be a false representation. A misleading half-truth is a representation that states the truth only so far as it goes but omits (or leaves out) important qualifying information necessary to avoid being materially misleading.

A person also makes a false representation of a material matter by actively concealing the truth. Fraud by active concealment means any words or acts that intentionally create a false impression covering up the truth or that remove or hinder an opportunity that might otherwise have led to the discovery of a material

fact. Fraud by active concealment is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent or delay further inquiry into a material matter.

If tolling applies based on fraudulent concealment, the statute of limitations runs from the date that Apex first discovered the alleged breach of contract or, with the exercise of reasonable diligence, should have first discovered the alleged breach. Thus, for Apex to be able to proceed on its claim of breach of contract, you must find by clear and convincing evidence that: (1) Lattice fraudulently concealed the fact of the alleged breach; and (2) notwithstanding reasonable diligence undertaken by Apex, Lattice's fraudulent concealment prevented Apex from discovering the alleged breach until sometime after December 18, 2014.

As shown in the *italicized* instructions, after you answer Question 2, you should go to Question 3.

**Instruction No. 24: Verdict Question 3 (Apex's Fraud Claim)**

The third question on the Verdict form asks: "Has Apex proven by clear and convincing evidence each element of its claim of fraud against Lattice?"

To prevail on its fraud claim, Apex must prove by clear and convincing evidence each of the following five elements:

      1.      Lattice made a false representation of a material matter;

2.      Lattice knew that the representation was false or

recklessly made the representation without knowing if it was

true or false;

3.      Lattice intended to mislead Apex or recklessly

disregarded whether it was misleading Apex;

4.      Apex reasonably relied on the representation; and

5.      Apex was damaged as a direct result of its reliance on the

representation.

A false representation of a "material matter" is one that would be likely to affect the conduct of a reasonable person.

A person who makes a representation that is a half-truth becomes obligated to make a full and fair disclosure of the whole truth. The failure to make a full and fair disclosure of the whole truth under those circumstances may be a false representation.

A person can make a false representation of a material matter by concealing the truth. A false representation by concealment occurs when a person, by any word or act, conceals a material matter either by creating a false impression covering up the truth, or by removing an opportunity that might otherwise have led to the discovery of the truth.

"Reckless" means an intentional doing or failing to do an act when one knows or has reason to know of facts that would lead a reasonable person to realize that the person's conduct not only creates unreasonable risk of harm to others but also involves a high degree of probability that substantial harm would result.

In determining whether a claiming party's reliance on a statement of the other party was reasonable, you must consider the totality of the parties' circumstances and conduct. In doing so, you may consider factors such as:

A.      any information known or obvious to the claiming party to confirm or refute the other party's statement;

B.      the relative status, knowledge, and experience of the claiming party and the other party;

C.      the previous experience of the claiming party and the other party in similar transactions; and

D.      whether the statement was specific or general.

The claiming party must prove each element of fraudulent misrepresentation by clear and convincing evidence. If you find that the claiming party has proved each element of fraudulent misrepresentation by clear and convincing evidence, you must also consider the issue of damages. A claiming party must prove the amount of damages, however, only by a preponderance of the evidence.

As shown in the *italicized* instructions after Question 3, if the answer to Question 3 is "Yes," go to Question 4. If the answer to Question 3 is "No," skip Question 4 and go to the next *italicized* instruction after Question 4.

**Instruction No. 25: Verdict Question 4 (Fraud Limitations Defense)**

The fourth question on the Verdict form asks: "Has <u>Lattice</u> proven by a preponderance of the evidence each element of its affirmative defense of statute of limitations against Apex's claim of fraud?"

Lattice asserts as an affirmative defense that Apex filed its fraud claim after the time limit set by the applicable statute of limitations. As previously explained, a statute of limitations sets a time limit within which a plaintiff must file a claim. The time limit within which a plaintiff must file a claim differs depending on the specific claim asserted. As previously stated, Apex filed this lawsuit on December 18, 2018.

The statute of limitations for a claim of fraud is two years from when the plaintiff first knew, or by the exercise of reasonable care and diligence should have known, facts that would make a reasonable person aware of a substantial possibility that the defendant's alleged fraud caused some amount of harm to the plaintiff.

For Lattice to prevail on its statute of limitations affirmative defense, <u>Lattice</u> must prove by a <u>preponderance of the evidence</u>, that before December 18, 2016,

Apex first knew, or by the exercise of reasonable care and diligence should have known, facts that would make a reasonable person aware of a substantial possibility that Lattice's alleged fraud caused Apex some amount of harm.

As shown in the *italicized* instructions after Question 4, if the answer to Question 2 is "Yes" **or** the answer to Question 4 is "No" (or both), go to Question 5. Otherwise, your deliberations are done. Do not answer any more questions. Please have the presiding juror date and sign this form and inform the Courtroom Deputy that you are ready to return to the Courtroom.

## Instruction No. 26: Verdict Question 5 ("*In Pari Delicto*" Defense)

The fifth question on the Verdict form asks: "Has <u>Lattice</u> proven by a preponderance of the evidence each element of its affirmative defense of "*in pari delicito*"?

Lattice asserts as an affirmative defense to <u>both</u> claims asserted by Apex (breach of contract and fraud) that Apex is barred from recovering any monetary relief in this lawsuit under what the law calls the doctrine of "*in pari delicto*," which is a Latin phrase. Under this doctrine, in any case of equal or mutual fault, the position of the defending party is the better one. I will explain.

A plaintiff may be "*in pari delicto*" when the plaintiff is as culpable as, or more culpable than, the defendant. If you find that Apex engaged in misconduct relating to its claims that makes Apex "as culpable or more culpable than"

Lattice—and that this misconduct is serious enough to deny Apex monetary relief—then you may find Apex to be "*in pari delicto*," such that Apex may not recover money damages against Lattice. <u>Lattice</u> bears the burden of proving its affirmative defense of "*in pari delicto*" by a <u>preponderance of the evidence</u>.

As shown in the *italicized* instructions after Question 5, if the answer to Question 5 is "No," go to Question 6. If the answer to Question 5 is "Yes," your deliberations are done. Do not answer any more questions. Please have the presiding juror date and sign this form and inform the Courtroom Deputy that you are ready to return to the Courtroom.

**Instruction No. 27: Verdict Question 6 (Actual Damages)**

The sixth question on the Verdict form asks: "What amount of actual damages, if any, has Apex proven by a preponderance of the evidence should be recovered against Lattice?"

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. The fact that I am instructing you regarding damages is not to be considered by you as an attempt by the Court to suggest that you should or should not award damages or the amount of damages that you should decide to award.

If you find liability in favor of Apex on <u>either</u> of its two claims, you must then decide the amount of Apex's actual damages (also known as "compensatory" or "economic" damages). <u>Apex</u> must prove the amount of its actual damages by a <u>preponderance of the evidence</u>.

Actual (or compensatory or economic) damages means the amount of money that will reasonably and fairly compensate Apex for any injury or damage that you find was caused by Lattice. In this case, "actual damages" means the objectively verifiable monetary losses, if any, that Apex has incurred. It is for you to determine what actual damages, if any, have been proved. Your award must be based on evidence and not on speculation, guesswork, or conjecture.

In addition, <u>Lattice</u> contends that <u>Apex</u> owes Lattice money because Apex never paid for the shipment of integrated circuits that was seized by Canadian authorities in December 2008. You may offset any judgment for Apex by subtracting any amount that you find Apex owes to Lattice. <u>Lattice</u> must prove its entitlement to any offset as well as the amount of any offset by a <u>preponderance of the evidence</u>.

As shown in the *italicized* instructions after Question 6, if the answer to Question 6 is <u>greater</u> than zero <u>and</u> the answer to Question 4 is "No," go to Question 7. If you have not reached Question 4, <u>or</u> if the answer to Question 4 is "Yes," <u>or</u> if the answer to Question 6 is zero, your deliberations are done. Do not

answer Question 7, and please have the presiding juror date and sign this form and inform the Courtroom Deputy that you are ready to return to the Courtroom.

**Instruction No. 28: Verdict Question 7 (Punitive Damages, Step One)**

The seventh question on the Verdict form asks: "Has Apex proven by clear and convincing evidence that it should recover punitive damages against Lattice?"

If you find for Apex on its <u>fraud</u> claim against Lattice, you may, but are not required to, award punitive damages. (Punitive damages are not available for a claim of breach of contract.) The purpose of punitive damages is to punish a party and to deter similar acts in the future. Punitive damages may not be awarded to compensate a party.

You may award punitive damages in favor of Apex and against Lattice only if <u>Apex</u> proves by <u>clear and convincing evidence</u> that Lattice:

1. has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety, or welfare of others; <u>or</u>

2. acted with malice.

"Malice" means intentionally doing an injurious or wrongful act without justification or excuse. This includes committing an act either with a wrongful motive or doing that act so recklessly as to be in disregard of social obligations, or doing so wantonly, maliciously, or wickedly.

A party seeking punitive damages must prove that party is entitled to obtain punitive damages by clear and convincing evidence. As I previously stated, clear and convincing evidence is evidence that causes you to believe that the truth of the factual matter needed for the claim of punitive damages is highly probable, not merely more likely than not.

As shown in the *italicized* instructions after Question 7, if the answer to Question 7 is "Yes," go to Question 8. If the answer to Question 7 is "No," your deliberations are done. Do not answer any more questions. Please have the presiding juror date and sign this form and inform the Courtroom Deputy that you are ready to return to the Courtroom.

**Instruction No. 29: Verdict Question 8 (Punitive Damages, Step Two)**

The eighth question on the Verdict form asks: "What amount of punitive damages should be awarded to Apex against Lattice?"

If you decide in Question 7 that punitive damages should be awarded against Lattice, you must then decide how much to award in punitive damages. There is no fixed standard for determining the amount of punitive damages, and you are not required to award punitive damages. If you decide to award punitive damages against Lattice, you should consider each of the following factors:

A.    How reprehensible was the defendant's conduct, considering the nature of that conduct and its motive?

B.      Is there a reasonable relationship between the amount of punitive damages and the harm caused by the defendant?

C.      In view of the defendant's financial condition, what amount is necessary to punish the defendant and discourage future wrongful conduct? You may not punish a defendant merely because it has substantial financial resources.

********** *CLOSING ARGUMENTS BY COUNSEL* **********

I will now invite closing arguments by counsel for the parties. We will first hear closing arguments by Apex, followed by closing arguments by Lattice, followed by rebuttal closing arguments by Apex. After that, I will give you a few additional final instructions.

# CONCLUDING INSTRUCTIONS

**Instruction No. 30: Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Instruction No. 31: Consideration of Evidence—Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, by email, by text messaging, or by Internet chat room, blog, website or application (including but not limited to Facebook, Facebook Messenger, Instagram, TikTok, YouTube, Twitter—or what is now called "X," LinkedIn, Snapchat, Reddit, or Threads), or using any other form of social media to communicate to anyone any information about this case or to conduct any factual or legal research about this case.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not do any research about this case, the issues, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media or any other source, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process

to start over. If any juror is exposed to any outside information, please notify the Court immediately.

**Instruction No. 32: Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the Court.

**Instruction No. 33: Evidence in Electronic Format**

The exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, monitor, and related equipment will be available to you in the jury room.

The Courtroom Deputy or a court technician will show you how to operate the computer and other equipment and how to locate and view the exhibits on the computer. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the Courtroom Deputy, Mary Austad. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to Ms. Austad, signed by your foreperson or by one or more members of the jury.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the Courtroom Deputy present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any non-juror is in the jury room, the jury shall not deliberate or discuss the merits of the case. No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of the equipment.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, or other material. Do not attempt to alter the computer

to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the Court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

**Instruction No. 34: Return of Verdict**

After you have reached unanimous agreement on each applicable question on the Verdict form, your presiding juror should fill in the form, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.