# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STEVEN A.W. DE JARAY, PERIENNE DE JARAY, DARRELL R. OSWALD,** and **APEX-MICRO MANUFACTURING CORPORATION**, | Case No. 3:19-cv-86-SI **ORDER** |
| Plaintiffs, | |
| v. | |
| **LATTICE SEMICONDUCTOR CORPORATION**, and **JOHN AND JANE DOES 1-20**, | |
| Defendants. | |

**Michael H. Simon, District Judge.**

Mr. Steven de Jaray, Ms. Perienne de Jaray, and Mr. Darrell R. Oswald (collectively, the "Individual Plaintiffs") sued Lattice Semiconductor Corporation ("Lattice"), alleging state and federal law claims arising from a business relationship between Lattice and Apex-Micro Manufacturing ("Apex"), a corporation in which the Individual Plaintiffs were executives and shareholders. The Court later granted leave to file a Second Amended Complaint ("SAC") to add Apex as an additional plaintiff. The Court refers to Apex and the Individual Plaintiffs collectively as "Plaintiffs." All Plaintiffs were represented jointly.

Throughout this lawsuit, Plaintiffs alleged that Lattice failed to disclose correctly the export-controlled status of two programmable logic devices ("PLDs") manufactured by Lattice and sold to Apex. Plaintiffs alleged that Lattice's datasheets stated or implied that these PLDs were not export controlled and that Lattice never told Plaintiffs otherwise. Although different Plaintiffs were actively litigating at various points throughout the litigation, including at trial, they consistently contended that they relied on these datasheets in believing the PLDs were not export controlled. Apex shipped the PLDs from Canada to Hong Kong. The products were seized by the Canada Border Services Agency ("CBSA"), who contended that the products ultimately were destined for Mainland China and thus needed an export-control permit. At trial, Lattice argued that Plaintiffs did not rely on the datasheets, were shipping the products to Mainland China through Hong Kong, and likely knew that the PLDs were export controlled.

Plaintiffs' claims were subject to significant pretrial proceedings. The parties are familiar with the background of this litigation, and a thorough discussion can be found in the Court's Order denying Lattice's Motion for Leave to Move for Sanctions Against Law Firms, ECF 608. By the time trial began, the only remaining Plaintiffs were Apex and Mr. de Jaray. At the conclusion of trial, the Court submitted to the jury only Apex's claims alleging fraud and breach of the implied duty of good faith and fair dealing.[1] The jury found that Lattice was not liable to Apex on either claim.

Lattice now seeks attorney's fees of $11,167,224.39 and costs of $2,052,434.62[2] from Plaintiffs, pursuant to: (1) the Court's inherent authority; (2) Oregon Revised Statutes ("ORS")

---

[1] At trial, the Court granted judgment as a matter of law against all claims brought by Mr. de Jaray. The Court also granted judgment as a matter of law against Apex's negligence-based claims.

[2] Lattice's original motion sought attorney's fees of $11,176,404.39 and costs of $2,200,820.95. ECF 564 at 9. In its reply, Lattice withdrew from its fee request $8,600 for time

§ 20.105; (3) the Lanham Act, 15 U.S.C. § 1117(a); and (4) Rule 37 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court denies Lattice's motion.

## STANDARDS

Under the American Rule, attorney's fees are generally recoverable only if there is a contract clause or statutory basis. *See Am. Republic Ins. v. Union Fid. Life Ins.*, 470 F.2d 820, 826 (9th Cir. 1972). A court also may award attorney's fees as a sanction pursuant to the court's inherent authority. "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). A district court may, for example, dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorney's fees, or assess fines. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001). "Although it is preferable that courts use—and first consider—the range of federal rules and statutes dealing with misconduct and abuse of the judicial system, 'courts may rely upon their inherent powers to sanction bad-faith conduct even where statutes and rules are in place.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (quoting *F.J. Hanshaw*, 244 F.3d at 1136-37). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

---

spent researching wrongful and malicious prosecution claims and $290 for preparation of a "road show." ECF 614 at 2. Lattice also withdrew from its requested costs $10,295 in document preparation fees, $947.01 for travel, $5,256.17 for first-class flights, and $131,888.15 already awarded by the Court as prevailing party costs. *Id.* at 2-3.

"[A] district court acting under its inherent authority to impose compensatory sanctions must apply a 'but-for' causation standard." *Am. Unites for Kids*, 985 F.3d at 1089 (citing *Goodyear*, 581 U.S. at 109). In other words, a compensatory sanction might be available if a court concludes that but for the sanctionable misconduct, there would not have been any harm warranting the relief. *Id.* at 1089-90. To impose a compensatory sanction, a court must find either: (1) a willful violation of a court order; or (2) bad faith on the part of the contemnor. *Id.* at 1089. Willfulness and bad faith are distinct concepts. A "willful" violation of a court order does not require proof of mental intent, such as an improper motive; rather, it is enough that the party acted deliberately. *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). Bad faith, on the other hand, requires proof of bad intent or improper purpose. *Id.*

## DISCUSSION

As noted, Lattice argues that it is entitled to attorney's fees pursuant to: (1) the Court's inherent authority; (2) ORS § 20.105[3]; (3) the Lanham Act; and (4) Rule 37 of the Civil Rules of Procedure. Although there are slight differences in the standards, at the core of the first three bases is the argument that Plaintiffs knew that their claims lacked a factual basis.[4] Rule 37, on

---

[3] "[I]n a pure federal question case in federal court, federal law governs attorneys' fees." *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 281 (9th Cir. 2018) (quotation marks omitted). In cases involving both state and federal claims, "so long as state law does not run counter to a valid federal statute or rule of court . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Id.* at 281-82 (quotation marks omitted). Thus, Oregon law governs an award of attorney's fees for Plaintiffs' state law claims. *See id.* at 283 (looking to California law to determine whether attorney's fees were available because it was a state law cause of action).

[4] Under the Court's inherent authority, sanctions may be imposed when "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Courts have found that a party may be sanctioned for bringing claims if the claims "completely lack a factual foundation." *See Humphries v. Button*, 2024 WL 624240, at *2 (D. Nev. Feb. 13, 2024) (quoting *Power Analytics Corp. v. Operation Tech, Inc.*, 2017 WL 2903257, at *3 (C.D. Cal. June 7, 2017)); *see also Martz v. Muncaster*, 2019 WL 13204202,

the other hand, depends on an alleged discovery violation. The Court addresses Lattice's first

three arguments together, then turns to its Rule 37 argument.

## A. Lack of Factual Support

Lattice argues that the Court should award attorney's fees as sanctions against Plaintiffs

because they filed this lawsuit "knowing that the key allegations in their complaint were not

true," lied throughout the case, and knew that their claims lacked a factual foundation.[5]

---

at *2-3 (N.D. Cal. Aug. 14, 2019). But "[e]ven weak claims are sufficient to avoid sanctions." *Humphries*, 2024 WL 624240, at *2.

ORS § 20.105 provides that "the court shall award reasonable attorney fees to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding" and "there was no objectively reasonable basis for asserting the claim, defense or ground for appeal." ORS § 20.105(1). "[T]he prevailing party is the party who receives a favorable judgment or arbitration award on the claim." ORS § 20.077(2). A claim "lacks an objectively reasonable basis only if it is *entirely devoid* of legal or factual support, either at the time it is made or, in light of additional evidence or changes in the law, as litigation proceeds." *Minihan v. Stiglich*, 258 Or. App. 839, 861 (2013) (emphasis added) (cleaned up). Accordingly, if evidence lends "at least some support to each element of the claim," the claim does not lack an objectively reasonable basis. *Lenn v. Bottem*, 221 Or. App. 241, 249 (2008).

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "A party is a prevailing party for purposes of an attorneys' fee award if it achieved a material alteration in the legal relationship of the parties that is judicially sanctioned." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1078 (9th Cir. 2015). A court should look to the "totality of the circumstances" to determine if the case is exceptional. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. There "is no precise rule or formula for making these determinations," but the Supreme Court identified a "nonexclusive" list of factors to consider, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554, 554 n.6 (quotation marks omitted).

[5] The parties do not dispute that Lattice is the prevailing party on all claims. On October 7, 2022, the Court emailed the parties a tentative opinion in which the Court indicated that it may grant Lattice's motion for summary judgment against the Individual Plaintiffs' claims for breach of duty of good faith and fair dealing and under the Lanham Act. The Court then

Specifically, Lattice contends that Plaintiffs did not rely on Lattice's datasheets, and the only evidence to support Plaintiffs' claims was false testimony. Lattice cites inconsistencies in Mr. de Jaray's testimony and argues that "[a] plaintiff's testimony alone . . . is insufficient to support a claim as objectively reasonable where other evidence directly contradicts that testimony and thus demonstrates that plaintiffs' position was untenable." *Kraft v. Arden*, 2009 WL 73869, at *4 (D. Or. Jan. 8, 2009); *see also Lenn*, 221 Or. App. at 249 (holding that the plaintiffs' testimony about their belief which was "directly counter to other evidence of their belief, does not render their claim objectively reasonable").

Plaintiffs respond that their claims were "amply supported by evidence." Plaintiffs also cite two cases from this district to argue that their claims were supported because they survived summary judgment and a motion for directed verdict. *See Ibanez de Dios v. Siri & Sons Farms, Inc.*, 2022 WL 16782452, at *1 (D. Or. Nov. 8, 2022) (assessing claims under an Oregon fee-shifting statute and concluding that "[b]ecause Plaintiff's claims survived a directed verdict and went before a jury, . . . Plaintiff's claims were not frivolous, unfounded, or objectively unreasonable"); *Kibbee v. City of Portland*, 2000 WL 1643535, at *8 (D. Or. Oct. 12, 2000) (explaining that "Defendants do not claim that [the plaintiff's] claims lack merit, nor could they since [the plaintiff's] claims survived summary judgment," even where the court previously held

---

denied Plaintiffs' motion for leave to amend the complaint to bring a Lanham Act claim by Apex, who the Court allowed as an additional Plaintiff. ECF 255. Plaintiffs later filed their SAC asserting the breach of duty of good faith and fair dealing only on behalf of Apex. ECF 256 ¶ 113. The Court granted summary judgment against Ms. de Jaray and Mr. Oswald's remaining state law claims for negligence and negligent misrepresentation, ECF 277, and fraud, ECF 452. The Court dismissed Mr. de Jaray's remaining state law claims and Apex's negligence and negligent misrepresentation claims during trial. ECF 556 at 261-64, 265-66, 277-78 (Trial Tr. 2740:18-2743:20, 2744:14-2745:7, 2756:23-2757:1, 2757:21-24). The jury returned a verdict finding no liability on the remaining claims—Apex's fraud and breach of duty of good faith and fair dealing claims. ECF 510.

that the plaintiff had submitted sham affidavits and videotapes). With respect to Apex's Lanham Act claim, Plaintiffs contend that it is not an exceptional case because where a "plaintiff has raised 'debatable issues' and can be found to have had a legitimate reason for bringing the lawsuit, it supports a finding that a case is not exceptional." *Delta Forensic Eng'g, Inc. v. Delta V Biomechs., Inc.*, 2021 WL 243323, at *5 (C.D. Cal. Jan. 22, 2021).

That Plaintiffs' claims survived motions to dismiss and for summary judgment is not itself sufficient to establish an objectively reasonable basis. A claim could survive summary judgment based on a lie. The Court does not find, however, that Plaintiffs' claims were "entirely devoid of legal and factual support." *See Minihan*, 258 Or. App. at 861. At summary judgment, Plaintiffs submitted evidence of a message from Lattice's Chief Executive Officer contained in Lattice's Export Control Manual ("ECM") stating:

> I am personally committed to integrating export control compliance into our general corporate culture.
>
> * * *
>
> Penalties for violations of U.S. and Singapore export control law may include substantial fines and imprisonment. In addition, violations could cause [Lattice] to lose its export privileges. Since a large percentage of our sales revenue derives from international transactions, any suspension or loss of export privileges would be devastating. Violation of other applicable export control laws could have similar consequences.

ECF 159-4 at 4. The ECM also contained a policy for "Compliance with Export Controls," which reinforces that "[s]ignificant civil and criminal penalties may apply to companies and individuals committing violations of Export Controls. The Legal Department must be consulted in any case where the proper actions for compliance with Export Controls are not clearly understood and approved." *Id.* at 8.

At summary judgment, Plaintiffs also cited the testimony of Lattice's export-control expert at deposition that the datasheets would "definitely be one piece of information that you would want to look at in order to help identify what—how the item might be classified. That would be one piece of information [that] would be useful." ECF 298-3 at 3 (Depo Tr. 160:10-14); *see also* ECF 196-2 at 5 (Gariepy Depo Tr. 41:9-15) (deposition testimony of Lattice's former Vice President of Corporate and Customer Quality, Michael Gariepy, that Lattice's "customers would expect the product we shipped to meet the specifications listed in the data sheets").

At trial, Plaintiffs offered their own expert, Thomas Andrukonis. Mr. Andrukonis worked for nearly 41 years at the Bureau of Industry and Security. He testified that to determine if a semiconductor requires a permit to ship, one should look at the datasheet and then look at the commerce control list to see if the item is export controlled. *See, e.g.*, ECF 542 at 134, 136-37, 143 (Trial Tr. 405:11-18, 407:21-408:5, 414:5-14). Further, although the Court recognizes that Mr. de Jaray had credibility issues at trial, Plaintiffs also offered testimony at trial that Lattice changed the export-controlled status of the PLDs at issue but did not amend its datasheets or notify its customers of that change. *See* ECF 541 at 207-09 (Trial Tr. 207:22-209:9). This evidence lends at least some factual support to Plaintiffs' claims.

Lattice's "vehement, heartfelt, intense disagreement with Plaintiffs' position is not a basis for sanction[s]." *Humphries v. Button*, 2024 WL 624240, at *2 (D. Nev. Feb. 13, 2024) (quotation marks omitted). As noted, Plaintiffs' claims are only sanctionable if they *completely* lack a factual foundation. *Id.*; *see also Martz v. Muncaster*, 2019 WL 13204202, at *2-3 (N.D. Cal. Aug. 14, 2019). Plaintiffs did not completely lack a factual foundation for their claims, even if Mr. de Jaray lacked credibility or was not fully forthcoming in his declarations or discovery

responses. The Court thus denies to award attorney's fees under its inherent authority,

ORS § 20.105, or the Lanham Act.

**B.  Rule 37**

Under Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, when a party fails to

obey a discovery order, "the court must order the disobedient party, the attorney advising that

party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure,

unless the failure was substantially justified or other circumstances make an award of expenses

unjust." Lattice argues that Mr. de Jaray failed to obey a discovery order by submitting a false

response to its interrogatory number 13, in which he stated that the seized goods that were

detained by the CBSA "were not destined for [business entities] Mingwell and/or Nancan or their

respective affiliates." At trial, Mr. de Jaray testified that he "can't deny" that "all the Lattice

chips that [Plaintiffs] purchased between December 30th, 2005, and December 22nd, 2009, that

all of them in fact were trans-shipped and sold to Mingwell." ECF 552 at 99 (Trial

Tr. 1390:11-17).

Plaintiffs respond that Mr. de Jaray was not purposely deceptive in his interrogatory

responses but simply was unclear in describing the consignment model he testified about at trial.

According to Plaintiffs, the products were not "destined for" Mingwell because they were only

"consigned" to Mingwell for incorporation into products that would be sent back to Canada.

It is not unheard of for a party to lie in sworn response to an interrogatory. The Court

does not condone this, but to allow such a response to shift the burden of attorney's fees

undermines the American rule. Despite Lattice's contention that "a truthful answer [by

Mr. de Jaray] would have ended the case" because Lattice would have won summary judgment

on terminating sanctions, this is far from certain. Lattice's confirmation that Plaintiffs shipped

chips to Mingwell in Hong Kong would not necessarily defeat Plaintiffs' claims based on

misrepresentations in Lattice's datasheets. Lattice also argues that all its "discovery efforts were focused on proving that the de Jarays were engaged in a diversion scheme via secret sales to Mingwell" and that "was the entire focus at trial." Again, this overstates the importance of the interrogatory response. Even if Mr. de Jaray had admitted that Apex was shipping chips to Mingwell, this does not mean that he would have admitted that Plaintiffs were involved a diversion scheme. Thus, Mr. de Jaray's false or misleading response to the interrogatory does not warrant sanctions under Rule 37(b).

## CONCLUSION

The Court DENIES Lattice's motion for attorney's fees and costs, ECF 564.

**IT IS SO ORDERED**.

DATED this 7th day of March, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge